Nicholas M. Pette, J.
This is an action for a judgment declaring that the defendant Aurigemma is not covered under the terms of the comprehensive personal liability protection of the standard homeowner’is insurance Policy No. 260051 (renewal of No. 250010) issued to 'him by plaintiff for the three-year *876 period from July 20, 1969 to July 20, 1962, which policy was in full force and effect on July 12, 1960 and from the date of its issuance until said date of .expiration.
Said policy provided comprehensive personal liability protection for defendant Aurigemma (hereinafter: “Insured”), as follows:
‘ ‘ PROVISIONS APPLICABLE ONLY TO SECTION II
‘ ‘ This 'Company agrees with the named insured:
“ Insuring Agreements
“ 1. Coverage F-Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, and as damages because of injury to or destruction of property, including the loss of use thereof.”
The insurer inserted in said policy certain exclusions among which was the following :
‘1 EXCLUSIONS
“ 'Section II of this Policy Does Not Apply:
“ (a) to any business pursuits of an insured, other than activities therein which are ordinarily incident to non-business pursuits; or to the rendering of any professional service or the omission thereof, except with respect to voluntary civilian defense activities; or to any act or omission in connection with premises, other than as defined, which are owned, rented or controlled by an insured ’ \
Under the definition section of the policy, the word “business” is defined as follows: “3. Business: ‘Business’ includes trade, profession or occupation.”
It appears that on July 12, 1960 and for some time prior thereto, certain real property with the buildings and improvements thereon erected on Ridge Road, in Marlboro, New York, was owned and in possession of Frank Consoli, now dead, and one Assunta Lopergold.
It further appears that at all the times aforesaid, the decedent, Frank Consoli, maintained on said premises a private swimming pool for use by himself and members of hi,s family and such persons as he invited to use the same.
It also appears that on one side of said pool there was a metal ladder erected for the purpose of entering and leaving said pool.
The record here also discloses that on July 12, 1960, at about 9:00 p.m., one Michael Angelo 'Consoli, now deceased, was a guest of said Frank Consoli and was staying as such guest in the home *877 of said Frank 'Consoli and was using said swimming pool at the invitation of said Frank Consoli.
The record here further discloses that on the aforesaid date said Michael Angelo Consoli, an infant, while in the act of attempting to leave the swimming pool and using the aforesaid metal ladder for that purpose was fatally injured by an electric current which had been permitted to enter the metal ladder that he was on.
The record also .shows that the defendant, Joseph De Bridgia, was a building contractor building swimming pools and that in or about the Summer of 1958 he built the aforesaid swimming pool and wire fence on the aforesaid property.
It also appears that in the Summer of 1959 the defendant Aurigemma performed the electrical wiring work in and about the aforesaid swimming pool for said Frank Consoli.
It further appears that the administrators of the estate of said Michael Angelo Consoli, deceased, have instituted an action for conscious pain and suffering and for wrongful death of said Michael Angelo Consoli, against the administrators of the estate of Frank Consoli, deceased, Stephen J. Aurigemma, Joseph De Bridgia and Assunta Lopergold, which action is now pending in the Supreme Court, Ulster County.
The complaint, in the Ulster County action, alleges that the insured Aurigemma was an electrical contractor doing electrical wiring and other electrical work for the general public. This is specifically denied in the answer interposed on behalf of the insured, Aurigemma, in said action.
It is the contention of the insured Aurigemma that, although he did in fact install the electrical wiring for the lights in the swimming pool, that he had done so in the Spring of 1958 as a favor to Frank Consoli, now deceased, a friend of long standing, and that he made no charge to Frank Consoli, except for the cost of materials actually used in the installation thereof, together with the sum of about $33 paid by Aurigemma to one Philip Marazzito for assistance rendered by Marazzito in the installation work so performed; that the insured, Aurigemma, made no charge whatsoever to Frank Consoli for his time and labor, nor did he derive any profit whatsoever therefrom; that he in fact assisted Mr. Consoli, at the latter’s urgent request, as a “ favor ” to an old friend.
It is further contended by the insured Aurigemma that he ivas not engaged in mg “ business pursuit ” when he rendered this assistmee to Mr. Consoli, nor was he engaged in any business pursuit for several years prior to the rendition of these services and the issuance of the subject policy, save for his main steady *878 employment by the Central Hudson Gas & Electric Corporation as an estimator, a full-time position held by the insured since 1950.
Plaintiff, to meet its burden of proof, must prove that the insured’s activities fell within the purview of a specific exception to the coverage under the subject policy. This, the defendant, Aurigemma, contends the plaintiff has failed to do upon the trial of this action.
This court is of the opinion that the burden is on the plaintiff to establish not only that the words and expressions used in the policy are susceptible of the construction it seeks, ‘ ‘ but that it is the only construction that can fairly be placed thereon.” (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49; Utica Carting, Stor. & Contr. Co. v. World Fire & Mar. Ins. Co., 277 App. Div. 483, 488.)
While it is true that if the terms of the policy and its exclusion clauses are clear and unambiguous and that they must be read in their ordinary sense and preclude any interpretation upon the part of the court, it is axiomatic that any ambiguity will be construed to the advantage of the insured and against the insurer who selected the wording. (Hartol Prods. Corp. v. Prudential Ins. Co., supra, p. 49.)
That the language employed must be accorded the connotation which a policyholder of ordinary intelligence would usually attach to it cannot be gainsaid. If the insurer wants to exclude any liability from the general coverage or to limit its liability in the manner now asserted, it has the responsibility of couching the exclusion in clear and unmistakable language so that no average person can be misled. (Morgan v. Greater N. Y. Taxpayer Mut. Ins. Assn., 305 N. Y. 243, 248; Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305, 312.)
The policy and the exclusory indorsement here were issued at the same time, so that the exclusion may not be considered to evidence a later or divergent intention from that expressed in the body of the policy. (Birnbaum v. Jamestown Mut. Ins. Co., supra, p. 312.) The rule which construes any ambiguity against the insurer has particular application where exclusions are involved. (Matsuo Yoshida v. Liberty Mut. Ins. Co., 240 F. 2d 824, 826.)
The purchaser of comprehensive insurance protection normally expects ordinary transactions to be covered and that the term 1 ‘ comprehensive ’ ’ would include “ those damages which an ordinary individual would reasonably and naturally regard as incidental to or flowing from the hazard insured against ” *879 (Tonkin v. California Ins. Co., 294 N. Y. 326, 329.) If the insurer would create an exception to such coverage, he must do so clearly. (Ritchie v. Anchor Cas. Co., 135 Cal. App. 2d 245.)
The meaning of the term “ business pursuit” as used by plaintiff in its exclusionary clause must be viewed in the light of the understanding of the ordinary insured, if unambiguous, or, if otherwise, to be construed against the insurer who prepared the form and created the wording.
Webster’s Third New International Dictionary, Unabridged, defines the “ key words ” in the subject policy as follows:
‘ ‘ Business, a commercial or mercantile activity customarily engaged in as a means of livelihood ”.
“ Pursuit. an activity that one pursues or engages in seriously and continually or frequently as a vocation or profession ”.
“ Trade, the business one practices or the work in which one engages regularly; one’s calling: gainful employment: means of livelihood ”.
11 Profession, a calling requiring specialized knowledge and often requiring long and extensive preparation including instructions in skills and methods ’ ’.
“ Occupation, that which principally takes up one’s time, thought and energies, especially one’s regular business or employment, also whatever one follows as the means of making a livelihood ”.
Finally, among lay dictionaries, Oxford Universal Dictionary (3rd Eev. ed.) defines these terms as follows:
‘ ‘ Business. Stated occupation, profession or trade * * * trade, commercial transaction or engagement ’ ’.
“Pursuit. *' '* # the action of following or engaging in something, as a profession, business, recreation, etc., that which one engages or follows ’ ’.
From all of the aforesaid authorities it is clear that two elements are present in almost every definition, either expressly or by implication: first, continuity, and secondly, the profit motive. As to the first, there must be a “ customary engagement ” or a “ stated occupation”; as to the latter, there must be shown to be such activity as a “ means of livelihood ’ ’; “ gainful employment ”; “ means of earning a living ”; “ procuring subsistence or profit”; “ commercial transactions or engagements ”.
• In this court’s opinion both elements are lacking in the case at bar, and under the clear meaning of the terms employed by the insurer, and as they are commonly understood by the policyholder of ordinary intelligence, in the absence of these essential *880 elements the insured’s activities on behalf of his friend of longstanding, Frank Consoli, cannot be considered as ‘ ‘ business pursuits ” so as to warrant denial of coverage.
In People v. Kaplan (8 AD 2d 163, 164), the court defines a trade as the business one practices or the work one engages in regularly; applying the feature of continuity discussed by the lexicographers. In People v. Jones (172 Misc. 368, 369), the court said: “ It has been generally held that one is doing business ’ or ‘ carrying on a business ’ when he is engaged in activities for the purpose of continued efforts in the pursuit of profit and gain and that such activities are essential to those purposes.” (Emphasis supplied.)
With like import, the United (States Supreme Court in Von Baumbach v. Sargent Land Co. (242 U. S. 508, 516) said that a corporation is “doing business ” when it: “is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes.” (See, also, Flint v. Stone Tracy Co., 220 U. S. 107, 171; Matter of City Bank Farmers Trust Co. v. Graves, 272 N. Y. 1; Matter of Green, 192 App. Div. 30.)
Bouvier’s Law Dictionary (Rawle’s ed. Rev.), page 406, defines a “Business ” as follows: “ That which occupies the time, attention, and labor of men for the purpose of livelihood or profit ’ ’.
There can be no dispute that the definitions announced for by laymen and those applied by the courts have in common the aforesaid two factors of continuity and the profit motwe. Without these, neither laymen nor jurist would call the rendition of a service a business pursuit. That both these elements are absent in this case, as contended by the defendant Aurigemma is clear and, without their existence established upon the trial by the insurer, plaintiff’s case must fail.
The insured, Aurigemma, was permitted to testify as to his transaction with Frank Consoli, deceased, a codefendant in this action. Plaintiff objected on the ground that such testimony was inadmissible under former section 347 of the Civil Practice Act, now adopted in full ¡by CPLR 4519, which so far as pertinent reads: “Upon the trial of an action * # * a party or a person interested in the event * * * shall not be examined as a witness in his own behalf or interest * * * against the executor, administrator or survivor of a deceased person * * * concerning a personal transaction or communication between the witness and the deceased person * * * except where the executor, administrator * * * *881 is examined in his own behalf, or the testimony of the * * * deceased -person is given in evidence, concerning the same transaction or communication. * * * No party or person interested in the event, who is otherwise competent to testify, shall be disqualified from testifying by the possible imposition of costs against him or the award of costs to him. ’ ’ (Emphasis supplied.) The word “ against ” used in the aforesaid section, in this court’s opinion, removes the objection to permitting Aurigemma to testify to his transaction with Frank iConsoli, since his testimony would not be against the interest of the representative or survivor of Frank Gonsoli and therefore not within the purview of the statute.
The fact that both the insured and the estate of Frank Gonsoli are parties to the case at bar removes said transaction from the provisions of the -hearsay rule, and unless CPLR 4519 forbids its admission such testimony would otherwise be competent.
There is no dispute between the insured and the estate of Frank Gonsoli. The only real issue in this case is the rights of the insured and his insurer, the plaintiff. The outcome of this action will not adversely affect the rights of the Frank Gonsoli estate, nor can testimony as to the transaction by the insured be used against said estate in the Ulster County action. Consequently CPLR 4519 is not applicable here. (See Matter of Booth, 215 App. Div. 516; Matter of Glasgow, 121 Misc. 613, revd. 209 App. Div. 884.)
It would serve no useful purpose for this court to attempt to burden this decision with a review and analysis of the voluminous testimony and documentary evidence adduced upon the trial of this action. The court was impressed by the testimony given by defendant Aurigemma and his witnesses, and, from the fair preponderance of the credible evidence elicited in his behalf, this court is convinced that defendant Aurigemma, in performing the electrical work for his friend, Frank Gonsoli, at the pool, was not engaged in any business activity or in the pursuit of any business within the contemplation or purview of the exclusionary clause in the plaintiff’s policy.
Suffice it to say that upon all the credible evidence elicited upon the trial of this action, this court finds and determines that plaintiff has failed to establish the material allegations of its complaint.
Accordingly, this, court finds and determines that (1) the plaintiff is obligated to respond in damages' under the protection and coverage of the subject policy, in the event its insured Aurigemma should be unsuccessful in the Supreme Court, Ulster County, action; and (2) the plaintiff is obligated to defend the *882 aforesaid action pending in the Supreme Court, Ulster County, on behalf of the defendant Stephen J. Aurigemma.
Motions made by plaintiff at the close of this case, as to which the court reserved decision, are denied.
The complaint is dismissed upon the merits and defendant Aurigemma is entitled to judgment in accordance herewith.