343 F.Supp. 79 (1972)
Vera LANE, Plaintiff,
v.
The HARTFORD FIRE INSURANCE COMPANY, Defendant.
No. 71 C 300(3).
United States District Court, E. D. Missouri, E. D.
March 28, 1972.
*80 Hyman G. Stein, Stein & Seigel, St. Louis, Mo., for plaintiff.
Joseph M. Kortenhof, and Ed E. Murphy, Jr., Murphy, Kortenhof & Ely, St. Louis, Mo., for defendant.

MEMORANDUM OPINION AND ORDER
WEBSTER, District Judge.
Plaintiff brought this action against defendant Hartford Fire Insurance Company, insurer of LeRoy McDonald, against whom plaintiff recovered a judgment of $25,000 in the Circuit Court of St. Louis County, Missouri for the wrongful death of her husband Washington Lane. Defendant filed an answer denying liability and asserting that the policy of insurance issued to LeRoy McDonald excluded from coverage the circumstances which gave rise to the judgment in the Circuit Court of St. Louis County. Thereafter, defendant filed a motion for summary judgment. At the hearing on the motion for summary *81 judgment, counsel for both sides conceded that there was no genuine issue as to any material fact, and plaintiff asked the court to enter summary judgment in favor of plaintiff. Thereafter, plaintiff filed a cross-motion for summary judgment by leave of court. An affidavit of LeRoy Edward McDonald was filed in support of plaintiff's cross-motion, to which defense counsel took exception. The court thereupon set the case down for trial and denied both defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment.
It was stipulated at the trial that all documents filed as exhibits in support of the respective motions for summary judgment, together with the entire file of the Circuit Court case, would be received in evidence, and that the case would be submitted on such evidence and the testimony of witnesses at the trial. The matter was tried to the court.

FACTS
On December 6, 1955, Washington Lane was fatally injured when his truck on which he was performing repairs rolled across his body as he lay beneath it. The accident occurred in the rear of the Dick Wildeisen Service Station in Clayton, Missouri. LeRoy Edward McDonald was an employee of the service station at that time and had worked there since 1956. He had known Washington Lane since 1956 "from waiting on him". They had become friends. McDonald had been at Lane's home and Lane had been at his. A few months before the accident, McDonald had worked on Lane's truck at Lane's home without charge. He had never worked on Lane's truck at his own home.
McDonald was a mechanic at the service station. He had had experience in working on trucks. The service station manager permitted regular customers from time to time to work on their automobiles on the blacktop adjacent and in back of the service station. Lane was one of those who had worked on his truck on the premises. The service station did not charge for such courtesy unless its employees actually did work on the vehicle.
On Sunday, December 5th, the day before the accident, McDonald told Lane that he needed a new saddle support for his truck. Early in the morning of December 5th, Lane came into the station for gas and again asked about the truck. Later in the afternoon, he returned and placed his truck in the rear of the station and began to work on it. McDonald testified that if Lane asked him a question about the work he gave an answer. He cannot recall the questions or the answers, but he testified that he did no work on the truck. He further testified that Lane did not ask him to help on the day of the accident and there had been no discussions or understandings the previous day about being paid if Lane brought the truck into the station; that McDonald did none of the maintenance and that neither he nor Wildeisen charged or received any money on account of Lane's activities.
Richard Wildeisen, operator of Dick Wildeisen Service Station, testified that Lane had been a regular customer for many years, and that Lane was a truck hauler. In past years, some small repairs, such as distributor repairs, had been made at the service station, but that the station had performed no major repairs to Lane's equipment. Lane was customarily charged for such services. Wildeisen confirmed McDonald's testimony that no payment had been received for any services on December 5th and that no parts were supplied to Lane on that day.
Norman Lane, brother of Washington Lane, testified that after the accident, McDonald told him that he was supposed to do some work on Washington Lane's truck; that he had told Lane to take up the drive shaft and told him to hit the drive shaft loose on the truck; and that he had told Washington Lane what parts to get for the truck.
It appears to be undisputed that in the course of loosening and removing *82 parts, the emergency braking system became disengaged, causing the truck to roll. No one else was present when the accident occurred, and Lane was not discovered until sometime thereafter.
In the original petition, filed in the Circuit Court of St. Louis County, plaintiff asserted that McDonald was acting as an employee of the service station with respect to the occurrence resulting in the death of Washington Lane. Defendant denied coverage on the basis of this petition. The petition was subsequently amended to delete these allegations and defendant was supplied with current pleadings. As a defendant in the Circuit Court case, McDonald, through his attorney, negotiated an arrangement with plaintiff under which she agreed not to try to collect from McDonald but would look only to his insurer for collection. Thereafter, a judgment of $25,000 was taken by default.

CONCLUSIONS OF LAW
Jurisdiction. This case was properly removed here from the Circuit Court of St. Louis County. Diversity of citizenship and the jurisdictional amount are established and jurisdiction is properly founded under Title 28 U.S.C. § 1332.
The policy of insurance issued by defendant to McDonald, which is the basis for this action, was a conventional homeowners policy insuring LeRoy E. McDonald and Geraldine R. McDonald, his wife, effective November 17, 1965 through November 17, 1968. The policy contained, under Section II, personal liability protection to the extent of $25,000 for each occurrence.
Under the heading "Insuring Agreements" the policy provides:
"The Company Agrees with the Named Insured:
"1. Coverage EPersonal Liability:
"(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * and shall defend any suit against the Insured alleging such bodily injury * * * and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent * * *."
The defendant bases its defense upon special exclusions contained in the policy which provide that Section II [the personal liability section] does not apply:
"(A) [1] to any business pursuits of an Insured, except, under Coverages E and F, activities therein which are ordinarily incident to non-business pursuits, * * *
(B) under Coverages E and F, to the ownership, maintenance, operation, use, loading or unloading of [1] automobiles or midget automobiles while away from the premises or the ways immediately adjoining, except under Coverage E with respect to operations by independent contractors for non-business purposes of an Insured not involving automobiles owned or hired by the Insured * * *"

Duty to Defend
We turn to the threshold question: was the insurer obligated to defend in plaintiff's prior action against LeRoy McDonald?
Under Missouri law, the duty of a liability insurer to defend pursuant to its agreement is ordinarily determined by comparing the language of the insurance contract and the allegations of the petition or complaint in the action brought by the person injured or damaged against the insured. Zipkin v. Freeman, 436 S.W.2d 753, 754 (Mo. 1968); Northwestern Mutual Insurance Company v. Haglund, 387 S.W.2d 230, 233 (Mo.App.1965); Aetna Casualty and Surety Company v. Hase, 390 F.2d 151, 153 (8th Cir. 1968). The petition originally filed in plaintiff's earlier action in the Circuit Court of St. Louis County contained the following allegations:
"4. That on or about the 6th day of December, 1965, the said Washington *83 Lane, while on the premises of the defendants at 525 South Hanley Road, St. Louis County, Missouri, was fatally injured when a truck then and there upon the premises of the defendants did fall on, roll upon and strike the said Washington Lane thereby directly causing the aforesaid fatal injuries, of which he died on the 6th day of December, 1965.
5. That said fatal injury and occurrence directly and proximately resulted from the negligence and carelessness of the defendants.
6. That the said defendant Leroy McDonald was, at the time of the occurrence, in the employ of the defendants Standard Oil Division of American Oil Company and Richard Wildeisen Standard Service Station.
7. That by virtue of said occurrence and the negligence and carelessness of the defendants, as aforesaid, a cause of action has accrued to the plaintiff, as widow of said Washington Lane, deceased, to have and recover of defendants damages in the amount of $25,000.00 pursuant to the Statutes of the State of Missouri, in such case made and provided."
An amended petition was subsequently filed which contained the following allegations:
"1. That the defendant Standard Oil Division of American Oil Company is, and was at all times herein mentioned, a corporation duly organized and existing under and by virtue of law with an agent and registered office in the State of Missouri.
2. That the said defendant Leroy McDonald was, at the time of the occurrence described herein, in the employ of the defendants Standard Oil Division of American Oil Company and Richard Wildeisen Standard Service Station and was the agent and servant of said defendants, who were at all times herein mentioned, in the business of owning and operating a general automobile service station business.
* * * * * *
5. That on or about the 6th day of December, 1965, the said Washington Lane, while on the premises of the defendants at 525 South Hanley Road, St. Louis County, Missouri, was fatally injured when an automobile truck then and there upon the premises of the defendants did run into and roll upon the said Washington Lane thereby directly causing the aforesaid fatal injuries, of which he died on the 6th day of December, 1965.
6. That the said Washington Lane had entered upon the said premises of the defendants as a business invitee of the defendants for the purpose of doing business with the defendants, acting by and through defendant Leroy McDonald.
7. That the defendants, acting by and through defendant Leroy McDonald being then and there in the possession of superior knowledge and skills and as part of their said business operation, thereupon undertook to and did direct the said Washington Lane in the dismantling of his automobile truck upon said premises.
8. That in the course of said dismantling of said automobile truck, the same did run into and roll upon the said Washington Lane, directly thereby causing him to sustain the aforesaid fatal injuries."
A second amended petition was subsequently filed in which all reference to Washington Lane's alleged status as a business invitee was omitted. As pertinent to the present suit, the second amended petition alleged:
"4. That on or about the 6th day of December, 1965, the said Washington Lane, while on the premises of the defendants at 525 South Hanley Road, St. Louis County, Missouri, was fatally injured when an automobile truck then and there upon the premises of the defendants did run into and roll upon the said Washington Lane thereby directly causing the aforesaid fatal *84 injuries, of which he died on the 6th day of December, 1965.
5. That defendant, Leroy McDonald, was then and there in the possession of superior knowledge and skills of the work being then performed and thereupon undertook to give advice to said Washington Lane in the dismantling of his automobile truck.
6. That in the course of said dismantling of said automobile truck, the same did run into and roll upon the said Washington Lane, directly thereby causing him to sustain the aforesaid fatal injuries.
7. That said fatal injury and occurrence directly and proximately resulted from the negligence and carelessness of the defendants in the following respects, to wit:
a. Defendants negligently and carelessly caused, suffered and permitted the said Washington Lane to dismantle said automobile truck in such a manner that the same was caused and permitted to run into and roll upon the said Washington Lane, although defendants knew, or in the exercise of ordinary care should have known, that the manner and method of dismantling said automobile truck was such that said automobile truck would or was likely to run into and roll upon the said Washington Lane.
b. Defendants negligently and carelessly failed and omitted to warn the said Washington Lane that said automobile truck being then and there dismantled would or was likely to run into and roll upon the said Washington Lane, although defendants in the exercise of ordinary care would have done so.
c. Defendants knew, or in the exercise of ordinary care should have known, that by virtue of the method then and there being used in the dismantling of said automobile truck being then and there dismantled would or was likely to run into and roll upon the said Washington Lane, although defendants, in the exercise of ordinary care, could have prevented the dismantling of said automobile truck, or changed the method thereof or warned the said Washington Lane of the danger thereof and thus and thereby have avoided said injuries to and death of the said Washington Lane."
It is not contested that defendant received notice of all three petitions. Defendant contends, however, that it was not obligated to defend the prior action by virtue of the "business pursuits" and "ownership, maintenance, operation, use, loading or unloading" exclusions contained in the insurance policy. A comparison of the language of the petitions and that of the insurance contract convinces this court that this contention is without merit.
All of the petitions base the theory of recovery on the alleged negligence of the defendants in failing to warn Washington Lane of the dangers in dismantling the automobile truck in the manner recommended by McDonald knowing Lane would rely upon his expertise; and that defendants' failure to warn resulted in his death. No reference is made in any of the petitions to LeRoy McDonald performing any work on the vehicle. The only allegations in any of the petitions specifically related to LeRoy McDonald is the charge that he gave advice to Washington Lane on dismantling the truck and the statement that he was in the possession of superior knowledge and skills. As noted, supra, the allegation regarding Washington Lane's status as a business invitee was omitted from the second amended petition.
The provisions for defense in the insurance policy are very broad, calling for defense even against "groundless, false or fraudulent" suits. Courts have generally placed the burden of uncertainty as to a policy's coverage on the insurer. Where the allegations of a plaintiff's complaint, albeit ambiguous, state a claim which is potentially or arguably *85 within the policy's coverage, the insurer must accept defense of the claim. Babcock & Wilcox Company v. Parsons Corporation, 430 F.2d 531, 536 (8th Cir. 1970); See generally 50 A.L. R.2d 458, 504 (1956); 7A Appleman, Insurance Law and Practice § 4683, at 439-440 (1962). The court finds that defendant was obligated under the terms of the insurance contract to defend against plaintiff's earlier suit.

Effect of Circuit Court Judgment
Since defendant was obligated to defend in the prior action and since it was given notice and a reasonable opportunity to defend, it may be said to have been "vouched in" in the earlier action. Aetna Casualty and Surety Company v. Hase, supra, 390 F.2d at p. 152. See: 1B J. Moore, Federal Practice ¶ 0.405 [9], at 773-774 (1965). The insurance contract issued by defendant to LeRoy McDonald was essentially a contract of indemnity. Where an indemnitor has been vouched in in an earlier action against its indemnitee and has been afford the opportunity to appear and defend, the judgment against the indemnitee, if obtained without fraud or collusion, is conclusive against the indemnitor under the doctrine of collateral estoppel in respect to all questions and facts therein determined provided they were necessary to the first suit. Drennen v. Wren, 416 S.W.2d 229, 234 (Mo. App.1967); Aetna Casualty and Surety Company v. Hase, supra, 390 F.2d at p. 153.
Collateral estoppel applies to default judgments. Thus where a default judgment is entered against an indemnitee, the indemnitor is bound by that judgment as to all issues necessarily determined thereby. Kollmeyer v. Willis, 408 S.W.2d 370, 379 (Mo.App.1966). The indemnitor is not, however, bound by a judgment obtained by fraud or collusion. Wells v. Hartford Accident and Indemnity Company, 459 S.W.2d 253, 259 (Mo.1970).
The docket entries in plaintiff's prior action in the Circuit Court of St. Louis County are in evidence. These show that the cause was called on November 4, 1969, that plaintiff appeared with her attorney, and that LeRoy McDonald was in default. A jury was waived and testimony adduced. Thereafter findings were made and judgment entered in favor of plaintiff and against LeRoy McDonald in the sum of $25,000 plus costs. The state court record does not show fraud or collusion in obtaining the prior judgment. The fact that LeRoy McDonald did nothing to contest plaintiff's claims against him alone does not support an inference that the judgment was obtained by fraud or collusion. Eakins v. Burton, 423 S.W.2d 787, 790 (Mo.1968). The agreement between plaintiff and LeRoy McDonald whereby plaintiff agreed not to levy execution upon obtaining a judgment against LeRoy McDonald was not fraudulent or collusive. Section 537.065 R.S. Mo.1969, V.A.M.S., expressly authorizes agreements of this nature.[1]

*86 Coverage

Defendant does not contend that plaintiff's prior judgment was obtained through fraud or collusion. However, it does argue that it is not liable to plaintiff under the insurance policy for the judgment against LeRoy McDonald because the conduct upon which the judgment is based falls within the "business pursuits" and "ownership, maintenance, operation, use, loading or unloading" exclusions of the insurance contract. Defendant is thus seeking to establish that LeRoy McDonald's conduct was not within the coverage of the policy. It does not appear from the minutes of proceedings in the Circuit Court that this issue was litigated in plaintiff's action against LeRoy McDonald, and resolution of the issue was not necessary to the rendition of judgment in that suit. The prior judgment is conclusive against defendant as to the negligence of LeRoy McDonald and the amount of damages, but it does not preclude defendant from litigating the question of coverage in this proceeding. Drennen v. Wren, supra, 416 S.W.2d at p. 235; Wells v. Hartford Accident and Indemnity Company, supra, 459 S.W.2d at p. 259; 1B J. Moore, Federal Practice ¶ 0.441 [2], at 3777 (1965). The court now examines de novo the question of coverage on the basis of evidence contained in the record and the testimony at trial.
(a) "Business pursuits". In Salerno v. Western Casualty & Surety Company, 8 Cir., 336 F.2d 14, decided under Missouri law, the insurer issued a comprehensive liability policy excluding coverage for "business pursuits". Subsequently, an action was brought against the insured for injuries growing out of a race horse bite. The United States Court of Appeals for the Eighth Circuit held that where the insurer accepted coverage as within the terms of the policy and took complete control of the defense of the action having knowledge of the insured's horse racing activities, lacking only the knowledge that the insured treated the farm and stables as a business operation for tax purposes, it was estopped to contend that the horse racing activities fell within the "business pursuit" exclusion of the policy. In the course of its opinion, the court stated:
"`Business pursuits' as used in the policy here considered is a very comprehensive term. It can only be construed as embracing everything about which a person may be engaged where profit is a motive." (336 F.2d 14, 19).
Allied Mutual Casualty Company v. Askerud, 254 Minn. 156, 94 N.W.2d 534 (1959) was an action brought by an insurer for an injunction and an adjudication as to its duties and liabilities under two insurance policies in respect to a personal injury suit pending against the insurer. The insured and a close friend, a LaVern Turvold, agreed to construct a house on property owned by the insured. Both men were employed by the same company and planned to work on the house in their spare time. Construction was financed by the insured and his wife mortgaging the property. The insured and Turvold planned that Turvold would purchase the house when it was completed if he could obtain the necessary financing. Turvold was to pay the value of the lot, all costs incurred in construction, and a reasonable sum for the value of the insured's labor. There was evidence that the insured planned to sell his own house and move into the new one in the event that Turvold could not obtain the necessary financing. There was no evidence to indicate that the insured ever planned to sell the house on the open market. The insured's father was injured while assisting in shingling the roof of the new *87 house. The evidence disclosed that the father did not work on a pre-arranged schedule and that he was not paid for any of his labors. The insurer in bringing the action sought a declaration of its duties and liabilities growing out of the injuries sustained by the insured's father. The court held that a "business pursuit" exclusion contained in the policy did not extend to the insured's activities in constructing the house. In reaching its decision, the court stated:
"We are of the opinion that the business contemplated by the printed provisions of the policy was a type of activity in which persons regularly engaged for the purpose of earning a livelihood or for gain such as a `trade, profession or occupation.' This criteria is certainly not met by the spare time endeavors of the insured in this case. In excluding `business pursuits' the policy intends to exclude coverage of commercial enterprises rather than the type of activity here demonstrated." (94 N.W.2d 534, 539-540).
In Home Insurance Company v. Aurigemma, 45 Misc.2d 875, 257 N.Y.S.2d 980 (Sup.Ct.1965), the court held that since the insured was not regularly employed as an electrician and installed electrical wiring for lights in a swimming pool without charge, such activities on behalf of his friend could not be considered "business pursuits" within the exclusion from comprehensive personal liability protection of a standard homeowners policy. After quoting definitions from Webster's Third New International Dictionary, Unabridged and the Oxford Universal Dictionary, Third Edition (Rev.), the court stated:
"From all of the aforesaid authorities it is clear that two elements are present in almost every definition, either expressly or by implication: first, continuity, and secondly, the profit motive. As to the first, there must be a `customary engagement' or a `stated occupation'; as to the latter, there must be shown to be such activity as a `means of livelihood'; `gainful employment'; means of earning a living'; `procuring subsistence or profit'; `commercial transactions or engagements'." (257 N.Y.S.2d 980, 985.)
When this test was applied in Fadden v. Cambridge Mutual Fire Insurance Company, 51 Misc.2d 858, 274 N.Y.S.2d 235 (Sup.Ct.1966), aff'd 27 A.D.2d 487, 280 N.Y.S.2d 209 (N.Y.1967), the court found that a fifteen year old son, working for his father without compensation in the father's business venture was not engaged in a business pursuit so as to exclude coverage under the provisions of the liability policy applicable to father and son in an action against them brought by an independent contractor injured by a power saw operated by the son. (The court reached this result even though the father's activities were excluded from coverage.)
In all of the cases cited above, the courts considered a profit motive to be a necessary element of the term "business pursuits". Here there was no such motive on McDonald's part. There is no indication that a desire for financial gain motivated McDonald in connection with the repairs on Lane's truck. There is no suggestion that Wildeisen expected McDonald to aid Lane in repairing the truck as a part of McDonald's duties as an employee of the service station. The record merely indicates that McDonald, while about performance of the duties his employer expected of him, gratuitously gave advice to a personal friend whom his employer permitted to be on the station premises for the purpose of repairing the truck.
(b) "Ownership, maintenance, operation, use, loading or unloading". Under the law of Missouri, in the absence of ambiguity, contracts of insurance must be construed according to the terms which the parties have used as taken in their plain, ordinary and popular sense. American Insurance Company v. First National Bank in St. Louis, 409 F.2d 1387, 1390 (8th Cir. 1969); Community Federal Savings and Loan Association of Overland v. General Casualty *88 Company of America, 274 F.2d 620, 624 (8th Cir. 1960); Safeway Stores, Inc. v. L. D. Schreiber Cheese Company, 326 F.Supp. 504, 513 (W.D. Mo.1971); Dieckman v. Moran, 414 S. W.2d 320, 321 (Mo.1967); Forir v. Toman, 202 S.W.2d 32, 34 (Mo.1947). Here the intended meaning of the words "ownership", "maintenance", "operation", "use", "loading", and "unloading" is not ambiguous.
Webster's New International Dictionary (2d Ed.) defines "ownership" as the "State, relation or fact of being an owner; lawful claim or title; property; proprietorship; dominion."
"The term maintenance would seem to include acts of either commission or omission relative to the external mechanical condition of a vehicle." 7 Appleman, Insurance Law and Practice § 4315, at 141 (1962).
"The term `operation' is included within the insuring expressions of many older forms of policies, and runs throughout the arterial structure of automobile insurance law. The better definition of the expression is that it involves personal physical management of the automobile by the person in question." 7 Appleman, Insurance Law and Practice § 4314, at 139 (1962).
"The noun `use' primarily means, `Act of employing anything, or state of being employed; application; employment; as the use of a pen; his machines are in use.' Webster's New International Dictionary, 2d Ed., p. 2806; . . . ." Smith v. Smith, 359 Mo. 44, 220 S.W.2d 10, 12 (1949).
The terms "loading" and "unloading" operate as an extension of "operation, maintenance and use" clauses. 7 Appleman, Insurance Law and Practice § 4322, at 155 (1962). The terms necessarily imply the transfer of something. At pp. 156-157 of Volume 7 Appleman, Insurance Law and Practice, it is stated:
"It has been held that loading begins at the time the insured received the articles and as a part of a continuing operation places them upon vehicles; and unloading ceases when the article is taken from the vehicle and as a part of a continuing operation is delivered to the customer at the place designated."
In this case, there was no evidence of action on McDonald's part that had any effect on the external mechanical condition, the "maintenance", of the truck. McDonald exerted no physical control over the vehicle within the meaning of the words "operation" and "use". Nothing was transferred to or from the truck and thus the "loading or unloading" clause does not apply.

Conclusion
The court therefore finds and concludes that the activities of LeRoy McDonald did not fall within the "business pursuits" or the "ownership, maintenance, operation, use, loading or unloading" exclusions of the insurance policy. Since the exclusions do not apply and since the issues of negligence and the amount of damages are conclusive against defendant by virtue of the prior judgment of the Circuit Court, defendant is liable under the terms of the insurance contract to pay plaintiff the $25,000 judgment entered against defendant's insured LeRoy McDonald "as damages because of bodily injury" to Washington Lane. R.S.Mo.1969 § 379.200, V.A.M.S.
Judgment will be entered accordingly.
So ordered.
NOTES
[1] Section 537.065 R.S.Mo.1969, V.A.M.S., provides:

"Any person having an unliquidated claim for damages against a tortfeasor, on account of bodily injuries or death, may enter into a contract with such tortfeasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tortfeasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tortfeasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tortfeasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the tortfeasor, or in both such counties, and if the same is so recorded then such tortfeasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any judgment rendered against the tortfeasor, arising out of the transaction for which the contract is entered into."