GEORGE SALIMBENE, Respondent, v MERCHANTS MUTUAL INSURANCE Co., Appellant. [629 NYS2d 913] —Judgment reversed on the law without costs, motion denied, cross motion granted and judgment granted in accordance with the following Memorandum: Defendant appeals from a judgment that (1) granted plaintiff's motion for summary judgment and declared that defendant owed a duty to defend plaintiff in an action entitled *Meek v Salimbene* pending in Federal court, and (2) denied the cross motion of defendant seeking a declaration that it was not required to defend or indemnify plaintiff in the *Meek* action.

In August 1991 plaintiff was employed by Occidental Chemical Corp. (Occidental) at its "Durez" plant in the City of Niagara Falls, New York. Plaintiff also was the president of Local 8-209, Oil, Chemical and Atomic Workers International Union, AFL-CIO (the union). In late July 1991 the union rejected a proposed collective bargaining agreement with Occidental for the Durez plant and voted to strike. The strike included picketing the Durez plant. On August 2, 1991, while plaintiff and other members of the union were picketing the Durez plant as part of the strike, Warren Meek attempted to drive a Ryder rental truck out of the plant and through the picket line. As Meek's truck came near the picket line, picketers approached the truck and threw rocks at it. The rocks smashed the windshield and side windows of the truck and struck Meek in the face, causing serious injury. Thereafter, Meek commenced a civil action in Federal court against plaintiff, individually and as president of the union, other members of the union, Occidental, the City of Niagara Falls and its police department. The complaint alleges two causes of action against plaintiff, one for assault and one for negligence.

Following commencement of the Federal action, plaintiff forwarded the complaint to defendant, his homeowner's insurance carrier. Defendant disclaimed coverage on the grounds that the injuries for which plaintiff sought recovery were expected or intended by plaintiff and arose out of his business pursuits as president and member of the union. In addition, defendant indicated that the allegations in the *Meek* complaint did not constitute an "occurrence" as defined in the policy.

Plaintiff thereafter commenced this action, seeking a declaration that defendant must defend and partially indemnify him in the *Meek* action for any recovery by Meek for injuries sustained as a result of the negligence of plaintiff.

Plaintiff moved and defendant cross-moved for summary judgment. The court granted plaintiff's motion and declared that defendant was obligated to pay the reasonable attorney's fees and related costs of plaintiff in defending the *Meek* action with an attorney of his choice, while deferring a declaration of defendant's obligation to indemnify plaintiff until after a verdict is rendered in Federal court. This appeal ensued.

Insurance contracts are liberally construed in favor of the insured and the court must consider the plain language of the contract as it would be understood by an average or ordinary citizen (*Miller v Continental Ins. Co.*, 40 NY2d 675, 676, 678). The insurer bears the burden of proving that the loss alleged falls within the exclusion and that there is no reasonable interpretation of the exclusion that supports the claim of the insured (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311). As we have previously noted, a determination of coverage should not be made in advance of trial of the underlying action unless the record clearly establishes that the harm caused was not within the coverage of the policy (*New York Cas. Ins. Co. v Ward*, 139 AD2d 922, 923).

We conclude that the insurer met its burden of proving that the loss alleged falls within the "business pursuits" exclusion of plaintiff's policy. The policy defines the term "business" to include trade, profession, or occupation. The exclusion covers business *pursuits*; the use of the plural "negates an inference that only the insured's principal or sole trade, occupation, or profession was excluded" (*Ploen v Aetna Cas. & Sur. Co.*, 138 Misc 2d 704, 709, citing *Krings v Safeco Ins. Co.*, 6 Kan App 2d 391, 628 P2d 1071).

Contrary to plaintiff's contention, the level of plaintiff's compensation as union president is irrelevant as long as plaintiff is entitled to payment for his work as union president. The further assertion of plaintiff that suspension of his monthly stipend as union president during the strike at Occidental removed the profit motive element (*see, Stewart v Dryden Mut. Ins. Co.*, 156 AD2d 951, 952) from his activities as union president is likewise unpersuasive. The union bylaws submitted by plaintiff on his motion show that plaintiff remained entitled to the monthly stipend. Plaintiff's acts as union president and as a member of the union were directed toward improving plaintiff's compensation and work conditions

as an employee of Occidental. Plaintiff's union participation and occupation as a chemical worker in a union shop are inextricably intertwined. Other courts have held that an insured is engaging in a business pursuit when his activities are "incidental to his employment" (*North Riv. Ins. Co. v Poos*, 553 SW2d 500, 501-502 [Mo Ct App]; *American Family Mut. Ins. Co. v Nickerson*, 813 F2d 135, 136; *see also*, Annotation, *Construction & Application of "Business Pursuits" Exclusion Provision in General Liability Policy*, 48 ALR3d 1096, 1110, § 6 [c]).

Although the union had never been involved in a strike during plaintiff's tenure as president or member, the bylaws of the union anticipate the possibility of a strike in pursuing the union's goals and specifically provide for punishment of union members who engage in any action that tends "to hinder the prosecution of a properly recognized and authorized strike conducted by the * * * Union." Plaintiff admitted in an affidavit that the strike was approved by the union and that the union was picketing the Durez plant at the time of the incident in which Meek was injured. As president of the union, plaintiff was one of the leaders of the strike. Plaintiff was, therefore, clearly acting within the scope of his role as union president and union member, and the sole purpose of that role was to improve the wages and working conditions of all union members at Occidental. The acts of plaintiff were, therefore, incidental to his employment and were within the business pursuits exclusion as a matter of law.

We further note that the allegations in the negligence cause of action set out in the *Meek* complaint do not constitute an occurrence as defined by the policy. The promise of an insurer to defend its insured against specified claims, as well as to indemnify for actual liability, is broader than its obligation to indemnify its insured (*Seaboard Sur. Co. v Gillette Co., supra*, at 310). "The duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be" (*Seaboard Sur. Co. v Gillette Co., supra*, at 310, citing *Goldberg v Lumber Mut. Cas. Ins. Co.*, 297 NY 148, 154). "[T]he duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased * * * [citations omitted]" (*Seaboard Sur. Co. v Gillette Co., supra*, at 310).

The policy defines an occurrence as "an accident". To determine if an occurrence is an accident, " 'it is customary to

look at the causalty [*sic*] from the point of view of the insured, to see whether or not, from his point of view, it was unexpected, unusual and unforeseen' " (*Miller v Continental Ins. Co.*, 40 NY2d 675, 677, *supra*, quoting 1A Appleman, Insurance Law & Practice § 391, at 22). Accidental results can flow from intentional acts. The damage in question may be unintended even though the original act or acts leading to the damage were intentional (*see, McGroarty v Great Am. Ins. Co.*, 36 NY2d 358, 364; *Ford Nursing Home Co. v Fireman's Ins. Co.*, 86 AD2d 736, 737, *affd* 57 NY2d 656). However, when the damages alleged in the complaint "are the intended result which flows directly and immediately from [the insured's] intentional act, rather than arising out of a chain of unintended though foreseeable events that occurred after the intentional act", there is no accident, and therefore, no coverage (*Ford Nursing Home Co. v Fireman's Ins. Co.*, *supra*, at 737; *see also, U.S. Underwriters Ins. Co. v Val-Blue Corp.*, 85 NY2d 821, 823).

Meek's complaint in the Federal action alleges that plaintiff and others undertook to intentionally stone Meek's vehicle. From the record before us, it is clear that plaintiff and others were participating in a picket line whose purpose was to shut down the plant. The stoning was an attempt to stop Meek's vehicle by either frightening Meek or injuring him. The act was done with the intention of inflicting an offensive bodily contact upon Meek or putting him in apprehension of such contact and thus, an assault was committed regardless of whether there was actual intent to inflict injury (*see, Trott v Merit Dept. Store*, 106 AD2d 158, 160). "New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently (*Trott v Merit Dept. Store*, 106 AD2d 158, 160; *Masters v Becker*, 22 AD2d 118, 120; Restatement [Second] of Torts § 16 [1977]). 'There is, properly speaking, no such thing as a negligent assault' [Prosser & Keaton, Torts § 10, at 46 [5th ed.])" (*Mazzaferro v Albany Motel Enters.*, 127 AD2d 374, 376). The injuries alleged in the *Meek* complaint were the direct and immediate result of plaintiff's intentional act and did not arise out of a chain of unintended though foreseeable events that occurred after the intentional act (*see, Ford Nursing Home Co. v Fireman's Ins. Co.*, *supra*, at 737).

We, therefore, reverse the judgment of Supreme Court and grant judgment in favor of defendant declaring that defendant has no obligation to defend or indemnify plaintiff in an action entitled *Meek v Salimbene* pending in Federal court.

All concur except Green, J. P., and Boehm, J., who dissent and vote to affirm in the following Memorandum.

Green, J. P., and Boehm, J. (dissenting). We respectfully dissent. We do not agree with the majority that plaintiff's alleged activity in connection with the strike constituted a "business pursuit" within the meaning of the policy exclusion. Because that term is not defined in the policy, it should be given a meaning that would be arrived at by the average policyholder (*see, Lewis v Ocean Acc. & Guar. Corp.*, 224 NY 18, 21; *Ploen v Aetna Cas. & Sur. Co.*, 138 Misc 2d 704, 709; *Fadden v Cambridge Mut. Fire Ins. Co.*, 51 Misc 2d 858, 863, *affd* 27 AD2d 487). In our view, the average person would not interpret "business pursuits" as encompassing picketing and other strike-related activity.

In determining the meaning of "business pursuits" as it would be understood by the average insured, our Court has adopted the two-part test set forth in *Home Ins. Co. v Aurigemma* (45 Misc 2d 875). To constitute a business pursuit for purposes of exclusion under a liability policy, "there must be two elements: *'first, continuity, and secondly, the profit motive'* " (*Stewart v Dryden Mut. Ins. Co.*, 156 AD2d 951, 952, quoting *Home Ins. Co. v Aurigemma, supra*, at 879; *accord, United Food Serv. v Fidelity & Cas. Co.*, 189 AD2d 74, 77; *Broome County Co-Op. Fire Ins. Co. v Kendall*, 178 AD2d 709, 710; *Levinson v Aetna Cas. & Sur. Co.*, 42 AD2d 811, 812; *Ploen v Aetna Cas. & Sur. Co., supra*, at 707; *Fadden v Cambridge Mut. Fire Ins. Co., supra*, at 862).

In our view, neither element is satisfied in this case. The element of continuity comprises "a customary engagement or a stated occupation" (*Fadden v Cambridge Mut. Fire Ins. Co., supra*, at 862; *accord, Levinson v Aetna Cas. & Sur. Co., supra*, at 812; *Home Ins. Co. v Aurigemma, supra*, at 879), a "particular activity" in which plaintiff "regularly engaged" (*Stewart v Dryden Mut. Ins. Co., supra*, at 951). Plaintiff submitted proof that striking and picketing were neither his customary nor regular activities as a chemical worker or as a union officer and member. The fact that the strike was related to plaintiff's occupation does not, without more, establish the element of customary, regular, continuous activity for the purpose of the business pursuits exclusion (*see, Baron v Home Ins. Co.*, 112 AD2d 391, 393; *Cooper v United States Fid. & Guar. Co.*, 82 AD2d 819; *Levinson v Aetna Cas. & Sur. Co., supra*, at 812; *Ploen v Aetna Cas. & Sur. Co., supra*).

Plaintiff's proof also establishes that plaintiff's activities in connection with the strike were not undertaken with "a view

toward earning a livelihood or making a profit" (*Stewart v Dryden Mut. Ins. Co., supra,* at 951-952). The fact that plaintiff was entitled to a small stipend as a union officer hardly demonstrates that his actions were motivated by profit (*see, Shapiro v Glens Falls Ins. Co.,* 39 NY2d 204, 206; *Broome County Co-Op. Fire Ins. Co. v Kendall,* 178 AD2d 709, *supra; Hanover Ins. Co. v Cowan,* 172 AD2d 490; *Allstate Ins. Co. v Noorhassan,* 158 AD2d 638, 640; *Stewart v Dryden Mut. Ins. Co., supra*). In any event, it is undisputed that plaintiff received no compensation during the period of the strike. Clearly, plaintiff's conduct did not satisfy the second element of the *Aurigemma* test, i.e., that "there must be shown to be such activity as a 'means of livelihood'; 'gainful employment'; 'means of earning a living'; 'procuring subsistence or profit'; 'commercial transactions or engagements' " (*Home Ins. Co. v Aurigemma, supra,* at 879; *accord, Fadden v Cambridge Mut. Ins. Co., supra,* at 862).

We also disagree with the majority's conclusion that the underlying complaint does not allege a covered "occurrence" that would trigger defendants' duty to defend. The policy defines "occurrence" simply as "an accident." Like the term business pursuits, "the term accident * * * is a word employed by an insurer in the contract and should be given the construction most favorable to the insured" (*McGroarty v Great Am. Ins. Co.,* 36 NY2d 358, 364). The *Meek* complaint alleges intentional acts resulting in bodily injury. The fact that the alleged stoning of the vehicle was intentional, however, does not take the resulting damage outside the policy's definition of an "occurrence" (*see, Continental Cas. Co. v Rapid-American Corp.,* 80 NY2d 640, 649). As the Court of Appeals recognized in *McGroarty* (*supra,* at 364), "it is not legally impossible to find accidental results flowing from intentional causes, i.e., that the resulting damage was unintended although the original act or acts leading to the damage were intentional."

In our view, the facts alleged in the underlying complaint support the conclusion that the injuries suffered were the accidental result of plaintiff's intentional acts (*see, Green v Allstate Ins. Co.,* 177 AD2d 871, 872; *Barry v Romanosky,* 147 AD2d 605, 606; *State Farm Fire & Cas. Co. v Irene S.,* 138 AD2d 589, *lv dismissed* 72 NY2d 1042). Meek, in fact, alleges that his injuries were both intentionally and negligently (i.e., unintentionally) inflicted by plaintiff when he deliberately threw rocks at the truck (*see, Melito v Romano,* 160 AD2d 1081, 1082). Based on those allegations, a jury could find that plaintiff intentionally threw rocks at the truck but did not intend or expect that Meek would be injured (*see, Green v Allstate Ins.*

*Co., supra,* at 872). The question whether negligence or assault is the appropriate theory of liability under those circumstances is of no moment. Rather, the issue is whether the underlying complaint alleges a covered "occurrence", i.e., an accident. We believe that it does. "[R]egardless of the initial intent or lack thereof as it relates to causation * * * if the resulting damage could be viewed as unintended by the fact finder the total situation could be found to constitute an accident" (*McGroarty v Great Am. Ins. Co.,* 36 NY2d, *supra,* at 364-365).

Because the facts alleged raise a reasonable possibility that plaintiff will be held liable for an act covered by the policy, defendant is obligated to provide a defense (*see, Meyers & Sons Corp. v Zurich Am. Ins. Group,* 74 NY2d 298, 302; *Evans v Royal Ins. Co.,* 192 AD2d 1105). Therefore, we would affirm the judgment. (Appeal from Judgment of Supreme Court, Niagara County, Mintz, J.—Declaratory Judgment.) Present—Green, J. P., Lawton, Wesley, Davis and Boehm, JJ.