[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (No. 104)AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (No. 105)
This is an action seeking a declaratory judgment that the defendant Aetna is required, under the terms of a policy of insurance, to defend its insured in a personal injury action arising out of a horse riding accident. The dispositive question in this matter is whether the boarding of horses is excluded from coverage under the policy in question as a "business pursuit." The parties have filed cross motions for summary judgment on this question.
A. FACTS
The facts relevant to this decision are restated, in relevant part, from a stipulation of facts provided by the parties. This case arises out of a personal injury action entitledDeutsch v. Popp, et al, Docket No. CV 91-0306520. In that matter the plaintiff, Ms. Deutsch, was injured while serving as an independent contractor of Carol and Charles Popp at their farm, Hidden Brook Farm[1]. Ms. Deutsch's injuries occurred on December 15, 1989, in her capacity as a groom, when she was kicked by a horse named "AJ", which was boarding at the farm. The owners of AJ are Susan and Harold Dale. The Dales' maintained homeowners liability insurance through Aetna, the defendant in the current action. The Aetna policy provided coverage[2]
for any person legally responsible for AJ unless that care arose "out of business pursuits of any insured."[3]
The Dales' paid $480.00 a month for the boarding of AJ at Hidden Brook Farm. At the time of the accident, the owner of the farm, Carol Popp, was employed full-time for Hermitage Insurance Company, and her husband, Charles Popp, was employed full-time at Clairol. During 1987-1990 Hidden Brook Farm reported gross income and net income as follows: 1990: Gross ($51,213.), Net ($-15,442.); 1989: Gross ($52,889.), Net CT Page 14618 ($951.); 1988: Gross ($55,188.), Net ($-15,914.); 1987: Gross ($43,241.), Net ($667.).
In 1985 the Popps began to board horses to defray the expenses associated with Carol Popp's own riding activities. Carol Popp received no income from her own riding. The number of boarded horses ranged from three to six. Carol Popp offered training and riding lessons in addition to boarding the horses. The Popps' maintained insurance through the plaintiff, Pacific Insurance, at the time of the accident. The Popps' have made demand on the defendant Aetna to defend them in the original action and to provide coverage. Aetna has refused, claiming that the circumstances surrounding the Popp's boarding of horses demonstrates that the Popps were engaged in a business pursuit within the meaning of the policy exclusion.
B. DISCUSSION
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.Miller v. United Technologies Corp., 233 Conn. 732, 745,660 A.2d 810 (1995). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.). Catz v.Rubenstein, 201 Conn. 39, 48, 513 A.2d 98 (1986). "The party moving for summary judgment has the burden of showing the absence of any genuine issues as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Suarez v. Dickmont PlasticsCorp., 229 Conn. 99, 105, 639 A.2d 507 (1994); Miller v. UnitedTechnologies Corp., supra 233 Conn. 744.
In this case the court is faced with simultaneous motions for summary judgment. The dueling motions require the court to declare which insurance company is responsible for defending the Popps in the underlying civil action. The dispositive question is whether the "business pursuits" exclusion of the Aetna policy applies to the Popps' boarding horses. The parties disagree both as to the appropriate definition of "business pursuits" and the application of that definition to the CT Page 14619 facts of this case.
In its motion for summary judgment, the plaintiff urges this court to adopt the definition of business pursuits set forth in Middlesex Mutual Assurance Company v. Lauridsen,
Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. CV 92-0507860S 12 Conn. L. Rptr. 352 (August 17, 1994) (Sullivan, J.). In Lauridsen, the court defined business as "the principle business of one's life in a commercial sense." Id. The defendant, on the other hand, urges the court to approve the more expansive definition adopted by a majority of courts considering this question. As set forth in Wiley v. TravelersInsurance Co., 534 P.2d 1293, 1294 (Okla. 1974) and Home InsuranceCo. v. Aurigemma, 257 N.Y.S.2d 980, 985, 45 Misc.2d 875
(1965), business is defined as: ". . . a trade, profession or occupation" characterized by continued or regular activity for the purpose of earning a profit." Id.
The only case setting forth the definition of a business pursuits in Connecticut is, Middlesex Mutual AssuranceCompany v. Lauridsen, supra. In Lauridsen the defendant engaged in car racing and car repair on weekends. His car and equipment were destroyed when the garage in which it was stored was struck by lightning and burned. The plaintiff insurer, Middlesex Mutual Assurance Company, refused to provide coverage, alleging Lauridsen's car racing was not a hobby but a business. The policy excluded from coverage business pursuits, defined as "`business' including trade, profession, or occupation".
The Lauridsen decision analyzed several out-of-state cases and adopted the definition of "occupation" as set out inGuaranty Insurance Company v. Duncan, 131 Ga. App. 761,206 S.E.2d 672, 674 (Ga.App. 1974), which concluded that an occupation is "the principle business of one's life in a commercial sense." That definition implies that an insured can have only one "principle business", and that when confronted with a situation in which an insured is involved in more than one commercial enterprise, only one may be deemed a "business" within the meaning of the policy exclusion.
The defendant relies on cases from other jurisdictions which have applied a more expansive definition of "business". Citing Wiley v. Travelers Insurance Co. and Home InsuranceCo. v. Aurigemma, supra, the defendant urges this court to adopt the definition of business that requires a two part inquiry: CT Page 14620 (1) Is the insured engaged in a continued or regular activity for: (2) the purpose of earning a profit. This court concludes that this flexible, fact-based inquiry is the better test and is in accord with the majority rule as set forth inConstruction and Application of "Business Pursuits" ExclusionProvision In General Liability Policy, 48 A.L.R.3rd 1096 (1973).
In Wiley v. Travelers Insurance Co., supra, the court held that the defendant's breeding, raising and selling of St. Bernard puppies from his home constituted a business pursuit. The defendant's activity, although part-time, was engaged in with regularity and with the intent of earning a profit. In reaching this conclusion the court observed that, "`Engaging in an occupation' as a meaning for `business pursuits' used in the exclusion does not mean sole occupation or sole trade. . . In a business pursuit the profit motive, or purpose of a profit, is important. Whether there is or is not actual profit is immaterial." Id.
Likewise, in Home Insurance Co. v. Aurigemma, supra, the court, after reviewing the usual and customary meaning of "business" concluded that "it is clear that two elements are present in almost every definition, either expressly or by implication: first, continuity, and secondly, the profit motive."
In this case the appropriate test to apply to determine whether the insureds' activity constituted a business is not whether boarding horses is the Popps' principle income generating activity, but rather whether the activity constituted a business or business pursuit, as that term is defined in Wileyand Aurigemma: is the activity conducted on a regular or continuing basis for the purpose of obtaining a profit?
Both Popps maintain separate full-time employment, which provided the bulk of their income. However, they do operate their horse farm on a year-round, part-time basis. The gross income from the farm was not insubstantial. According to their tax returns for the years 1989-1991, the farm's gross revenues exceeded $50,000 for each of the three years. The Popps' itemized 1040 schedules included deductions arising out of the boarding activities. Schedule F, the farm schedule, included deductions for advertising/promotion and farm insurance. In response to schedule F's question "Business or activity to which this form relates," the Popps' stated "Horse Boarding/Training CT Page 14621 Farm" and "Horse Boarding Training Facility". The Popps have an employee working for the farm, Ms. Deutsch, who is considered to be an independent contractor. Ms. Deutsch provided professional services to the horses. The Popps' purpose for boarding horses was "to defray the expenses associated with Carol Popps' own riding activities", i.e. a purely business reason driven by a profit motive[4], and not for the love of the activity[5]. Based on these undisputed facts, I find that the boarding of horses by the Popps' constitutes a business in that it was a continuing activity engaged in for the purpose of making a profit[6].
C. CONCLUSION
The boarding of horses in this case constitutes a business pursuit as defined in the exclusion provision of the Aetna policy. Because no genuine question of material fact exists as to whether Carol and Charles Popp were operating a business, within the meaning of the policy, the defendant's motion for summary judgment is granted[7] and the plaintiff's motion for summary judgment is denied.
For the reasons herein stated, the defendant's motion for summary judgment, #105, ought to be and is hereby granted and the plaintiff's motion for summary judgment, #104, ought to be and is hereby denied.
SO ORDERED.