The WESTERN CASUALTY AND SURETY COMPANY, Appellant,

v.

POLAR PANEL COMPANY, Appellee.

POLAR PANEL COMPANY, Appellant,

v.

AGRICULTURAL INSURANCE COMPANY, Appellee.

Nos. 71-1255, 71-1124.

United States Court of Appeals, Eighth Circuit.

March 16, 1972.

Frank X. Cronan, Carroll, Cronan, Roth & Austin, Minneapolis, Minn., for appellant Western Casualty and Surety Co.

Robert G. Share, Henretta, Friedell, Share, McGinty & Solomon, P. A., Minneapolis, Minn., for appellee-appellant Polar Panel Co.

Robert M. Frisbee, Meagher, Geer, Markham & Anderson, and O. C. Adamson, II, Minneapolis, Minn., for appellee Agricultural Insurance Co.

Before GIBSON and HEANEY, Circuit Judges, and VAN PELT, Senior District Judge.*

GIBSON, Circuit Judge.

The defendant, The Western Casualty and Surety Company, appeals from a judgment entered against it on its policy of comprehensive liability insurance issued to the plaintiff, Polar Panel Company.[1] Western denied coverage on certain defective wall panels installed by the insured, Polar Panel Company, contending that the policy did not cover a defective work product made or installed by the insured. Polar Panel settled a $400,000 suit filed by Kohl Corporation, in whose building the defective panels were installed, for breach of contract and warranty for the sum of $21,000. In this declaratory judgment action in the federal District Court, The Honorable Miles Lord presiding, plaintiff Polar

---

* Senior District Judge for the District of Nebraska, sitting by designation.

1. Other insurance companies were joined in this action but the trial court found coverage only as against Western. The plaintiff Polar Panel Co. has not appealed from the court's ruling as to the insurance coverage with the exception of Agricultural Insurance Company on which plaintiff does take an appeal which is to be considered in the event the judgment against Western is reversed. Agricultural Insurance Company had issued a limited excess coverage policy. We do not reach the issues raised in the Agricultural appeal since we think the policy issued by Western covers the occurrence in question.

Panel sued for the settlement figure of $21,000 plus attorneys' fees expended in the third-party action and for reasonable attorneys' fees in this action. We affirm except as to the attorneys' fees allowed in this suit.

Polar Panel constructed and installed insulating panels in a refrigerated building constructed for Kohl Corporation in the Milwaukee area. It manufactured these insulating panels by laminating sheets of aluminum to sheets of fire retardant plywood. The laminated sheets with the aluminum on the two exteriors were attached to frames which were put into a press and liquid urethane was foamed into the cavity. As finally processed the product was a monolithic slab of insulation about four inches thick which was primarily used for wall paneling in the freezer room and freezer dock facilities of the building. The panels became integral parts of the building and served as non-weight bearing outside and inside walls of the freezer and cooler rooms in the building.

As originally bid, the panels were not to be constructed of fire retardant plywood, but upon the architect's request Polar agreed to make the panels fire resistant though it had not had any prior experience in constructing fire resistant paneling. About eight months after the building had been completed, blisters ranging in size up to about a silver dollar began to appear on panels forming the inside walls of the refrigeration rooms. Investigation disclosed that a corrosive problem existed on the interior surfaces of the panels caused by a chemical reaction of the fire retardant chemicals coming in contact with the aluminum under conditions of constant high humidity present in the refrigeration room. A blister would open on the panel and emit oxide. This caused an unsightly appearance but did not affect the insulating quality of the panels.

It was apparent that the panels were defective for the purpose intended and caused a diminution in the value of the completed building. The replacement of the panels would be very costly compara-

tively and a settlement was reached with Kohl for $21,000, representing the projected cost of masking the inside panels with some appropriate covering.

Three policies issued by Western cover the period involved in this action. In the insuring agreements of the policies effective during the period October 21, 1965 to January 1, 1967, Western agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: * * *

"Coverage C—property damage caused by accident and arising out of other than the ownership, maintenance and use of automobiles;

and The Western shall defend any suit alleging such property damage * * * even if groundless, false or fraudulent; * * *."

The policy in effect from January 1, 1967 to January 1, 1968, provided:

"The Western will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

B. property damage

to which this insurance applies, caused by an occurrence and The Western shall * * * defend any suit against the insured seeking damages on account of such * * * property damage * * * even if groundless, false or fraudulent * * *."

"'occurrence' means an accident, * * * which results, * * * in * * * property damage neither expected nor intended from the standpoint of the insured."

Both policies provided for coverage for property damage resulting from "products hazard" and "completed operations hazard" if the property damage occurs away from premises owned or rented by the named insured and after the physical possession of the products had been relinquished to others. It is clear that the Western policies would cover this

damage claim unless an exclusionary clause applied.

The policies issued by Western contained standard exclusionary clauses; we will consider only those relied on by Western. The policies in effect from October 21, 1965 to January 1, 1967, read:

"This policy does not apply:

" * * * under coverage C, to property damage to * * * any goods, products or containers thereof manufactured, sold, handled or distributed * * * by the named insured, or work completed by or for the named insured, out of which the accident arises."

The policy in effect from January 1, 1967 to January 1, 1968, contained a similar exclusion:

"This insurance does not apply:

* * * * * *

"(k) to property damage to the named insured's products arising out of such products or any part of such products;

"(l) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; * * *."

There is no suggestion by either party that the coverage and exclusions contained in the policies differ in any material respect for the purposes of this appeal.

Western contends that the only damage appearing was to the named insured's product itself, the interior surfaces of the Polar panels, and that the primary function of the panels, that of insulation, had not been impaired. However the appearance of the building was affected, and the unsightly appearance of the blistered panels caused a substantial diminution in the value of the building. The building owner had a

right to have this defect in the panels corrected or adjusted by Polar Panel. The breach of warranty of Polar Panel to the building owner is not an issue in this case but the liability there is apparent.

The comprehensive liability insurance policy issued is not as broad as Polar's breach of warranty liability as the manufacturer and installer of the panels, nor is the damage to the panels covered under the policy as that would be excluded as "property damage to the named insured's product arising out of such products." However, under Minnesota law[2] where the defective product has been incorporated into a building and caused a diminution in the value of the building the occurrence constitutes property damage to the entire building and is covered by a policy of this type.

The exclusionary clause reaches and carves out of the policy the damage to the particular product but not the overall damage that the incorporation of the defective product causes to the entire structure. The measure of damages announced in Hauenstein v. St. Paul-Mercury Indem. Co., 242 Minn. 354, 65 N. W.2d 122 (1954), is the diminution of the market value of the building, or the cost of removing the defective product and restoring the building to its former condition plus any loss from the deprivation of use, whichever is the lesser.

In this case the cost of removing the product was estimated at $125,000 and the loss of the use of the building in the neighborhood of $200,000. Thus the settlement made by Polar Panel with Kohl was a provident one and Western has no cause for complaint about this being a gratuitous payment.

In Hauenstein defective plaster ruined the appearance and aesthetic value of the building and had to be removed. The principles announced in Hauenstein have been accepted in a number of jurisdictions. See, e. g., Da-

2. The parties agree that Minnesota law applies in this diversity case. Polar was incorporated and had its principal place of business in Minnesota and the insurance policy was written and delivered in that state.

kota Block Co. v. Western Cas. & Sur. Co., 81 S.D. 213, 132 N.W.2d 826 (1965) (recovery allowed where glazed building blocks used for exterior walls lost their original color); Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co., 281 F.2d 538 (3d Cir. 1960) (paint flaked off of jalousies); Bowman Steel Corp. v. Lumbermans Mut. Cas. Co., 364 F.2d 246 (3d Cir. 1966) (defective laminated siding).[3]

■ The fact that the blistered panels had not yet been repaired at the time the case was tried is irrelevant. The damage to the building remains.

We have further considered the notice objection raised by Western and agree with the District Court that notice was given as soon as reasonably practicable and there was no showing that the insurer Western was prejudiced by any delay in notification.

■ Since Western was obligated under its policy to defend the action by Kohl Corporation against the insured, the allowance of attorneys' fees in the amount of $8087.44 for the defense of the Kohl suit was proper.

■ A more difficult question arises on the allowance of the $10,000 attorneys' fees for the prosecution of this declaratory judgment suit. Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966) held that such attorneys' fees could be awarded where an insured is compelled to defend an action by the wrongful refusal of the insurer to defend it. If this were the last statement by the Minnesota Court on this issue we would affirm. However, the more recent cases on the issue show a definite trend toward narrowing the applicability of the Morrison rule. The first of these, Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co., 276 Minn. 362, 150 N.W.2d 233 (1967), was distinguished on the ground that attorneys' fees would be awarded only in contests between the insured and the insurer and not in the case of one insurance company seeking to hold another insurance company liable for a claim on a separate insurance policy covering the same insured. The second and third cases may be appropriately considered together as the Minnesota Supreme Court held that the rule did not apply to the case where the claim did not involve a liability of the insured to a third party. Abby v. Farmers Ins. Exch., 281 Minn. 113, 160 N.W.2d 709 (1968) (suit to establish right to disability benefits); Olson v. Preferred Risk Mut. Ins. Co., 284 Minn. 498, 170 N.W.2d 581 (1969) (collision coverage under automobile policy). The fourth case is the most instructive. Rent-A-Scooter v. Universal Underwriters Ins. Co., 285 Minn. 264, 173 N.W.2d 9 (1969) involved facts which were much the same as the facts in Morrison, with a claim being made against the insured by a third party that the insured alleges to be covered under the policy issued by the insurer. It differs from Morrison in two respects, (1) the insured did not defend and a default was entered and (2) the insured did not bring in the insurer as a third party defendant. The Court held:

> "[W]hen an insured is compelled to defend himself in an action because his insurer has erroneously denied its obligation to defend him under its liability policy, the attorneys' fees incurred in the defense of that action may be awarded the insured as contract damages in a subsequent action against the insurer; but, absent statutory authority or specific provision in the insurance contract itself, the

---

3. The California case of Volf v. Ocean Accident and Guar. Corp., 50 Cal.2d 373, 325 P.2d 989 (1958) to the extent that it might be construed as contrary to the above cases would not be controlling in Minnesota. In Volf the California Supreme Court held no coverage for cracking stucco exterior on a residence constructed by the insured.

The Eighth Circuit case, Home Indem. Co. v. Miller, 399 F.2d 78 (8th Cir. 1968), is similarly unpersuasive in this situation as it deals with damages to a house constructed by the insured and was decided under Missouri law.

insured may not recover attorneys' fees incurred in an action against the insurer to establish coverage under an insurance policy." 173 N.W.2d at 11–12.

While Polar contends that the attorneys' fees were denied solely because the insured allowed a default to be entered, such a distinction is unrealistic. The holding of the Court in *Rent-A-Scooter* seems to clearly overrule the earlier *Morrison* decision. We hold the insurer is not liable for the $10,000 award of attorneys' fees for the prosecution of this action.

Judgment affirmed on the damage award of $21,000 and attorneys' fees of $8087.44 in connection therewith, plus interest and costs; judgment vacated on the award of $10,000 attorneys' fees for prosecution of the instant suit. Costs assessed 75 per cent against appellant Western Casualty and Surety Company and 25 per cent against appellee Polar Panel.