569 F.Supp. 1429 (1983)
Carl SIMONS, et al., Plaintiffs,
v.
GREAT SOUTHWEST FIRE INSURANCE COMPANY, a corporation, Defendant.
No. 83-734C(B).
United States District Court, E.D. Missouri, E.D.
August 17, 1983.
Pat L. Simons, St. Louis, Mo., for plaintiffs.
Frank N. Gundlach, St. Louis, Mo., for defendant.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
By this action plaintiffs seek to reach and apply the proceeds of the $100,000 insurance money provided for in a policy of insurance to a judgment obtained by them against the insured in the sum of $500,000. Plaintiffs also seek to recover an additional amount necessary to completely satisfy their judgment based on defendant's failure to defend its insured. Both parties filed motions for summary judgment which were taken with the case. After a trial, the matter is now for decision. Missouri law governs.
The policy in question, captioned "Manufacturers' and Contractors' Liability Insurance" and "Completed Operations Liability Insurance" was issued by defendant to Building Restoration of St. Louis, Division of Marché, Inc. (hereafter, Marché) covering the period from December 1, 1978 to December 1, 1979. On or about November 28, 1978, Marché entered into a "Construction Agreement" with plaintiffs to re-roof a large commercial building owned by plaintiffs and to perform other repair work related thereto for a total price of $290,000 (which was paid).
The construction contract required Marché to carry workmen's compensation, public liability and builder's risk insurance, but made no reference to the type of insurance involved in this case. It also required Marché, at plaintiffs' request, to correct any defaults due to faulty material or workmanship, and to provide certain guarantees to be effective in connection with labor done and material furnished. These guarantees were furnished.
*1430 By its personal guarantee, Marché agreed to cause to be repaired any leaks in the roofing system for a period of 5 years (extendable under certain circumstances for an additional 5 years) if the leaks occur as a result of splits in the project areas resulting from settlement or structural failure on the roof deck or its supporting members, or improper workmanship. Specifically excluded from the guarantee was responsibility for damage to the building itself and any consequential damages. The guarantee was expressed to be exclusive of all others, stated or implied, and for a particular purpose and was in lieu of all other liabilities or warranties, express or implied, in fact or in law.
The work of installing the roof was completed by Marché in the spring of 1979. In April of the following year, plaintiffs became aware that the roof was cracking, developing splits, and leaking. Through its attorneys, plaintiffs notified Marché by letter of April 18, 1980 that "substantial areas" of the roofing material applied by it "are now cracking and causing leaks", and demanded immediate "repair and replacement where necessary of all defective material and workmanship."
It may be inferred that Marché made some repairs to the roof following the receipt of the letter. However, whatever it may have done was insufficient,[1] so that as of November 28, 1980 plaintiffs sent a letter to Marché submitting (without prejudice to any rights they may have) a proposed agreement that because of the roof failure plaintiffs were willing to work with Marché "to see whether the problems can be handled" by Marché repairing the then present and probable leaks, in addition to repairing "future leaks as such leaks are identified." In this proposal plaintiffs "agreed" to defer filing suit against Marché for so long as plaintiffs believed the roof system as repaired was working to their satisfaction. So far as we are advised, this "agreement" was not executed by Marché. Instead, Marché (seeking advice on whether it should enter into the proposed agreement) sent copies of the April 18, 1980 and November 28, 1980 letters to defendant's general agent, who in turn forwarded them to defendant with an inquiry as to Marché's rights under the policy. On January 22, 1981, defendant's claim supervisor wrote to Marché's Executive Vice-President (confirming a telephone communication of the previous day) in which he stated the position of defendant that plaintiffs' claim "as presently presented" was not covered under the terms of the policy, pointing out that "(t)he claim being presented by the plaintiff" in this instance is "for repair and/or replacement of the roof ... The indication from you during the conversation was that the roofing material which you had applied was failing and the plaintiff wishes your assurance that it will be replaced." After setting forth what defendant contended were the applicable exclusion provisions of the policy, defendant stated that "(a)s there is no coverage for the insured under the aforementioned policy we will take no further action in this matter."
As for the proposed agreement (in the November 29, 1980 letter) defendant suggested that Marché refer the matter to its personal counsel, thereby declining to express any opinion as to whether Marché should agree to it. We are not advised as to whether Marché acted upon this latter suggestion. Apparently, Marché decided against entering into the proposed agreement, inasmuch as the next event of which we are apprised is the filing on March 11, 1981 of a suit by plaintiffs against Marché and two other corporations[2] in the Circuit Court of St. Louis County, Missouri. A copy of the summons and petition was subsequently forwarded to defendant by its general agent. By letter dated April 22, 1981, defendant repeated its previous position that the policy did not provide any *1431 coverage for the claim asserted in that suit and for that reason the defendant would not afford Marché a defense nor pay any judgment rendered as a result of the loss.
In the action against Marché and the other defendants therein, the petition alleged that the defendants expressly and impliedly warranted (prior to installation) that the roofing system recommended by them was reasonably fit for the purpose intended, namely, to provide a good and sound roof; that as part of the Construction Agreement, Marché agreed to guarantee the performance of the roof for a period of five years against, among other things, splits in the project area not resulting from settlement or structural failure of the roof deck or its supporting members; that after the roof system was installed by Marché, plaintiffs discovered in April, 1980, that the roof system was cracking, developing splits and leaking; that the express and implied warranty that the roof system was reasonably suited to the use to which it was put was untrue and was breached by defendants in that the system was not reasonably fit and cracked and failed, caused leaks and "threatened" the stability of plaintiffs' building; that plaintiffs called upon Marché to honor its guarantee, but Marché has failed and refused and continues to fail and refuse to do so, and that "as a direct and proximate result of the failure of the (product) Plaintiffs will be required to engage roofing contractors to redo and repair the roof at the premises at 8500 Valcour all to Plaintiffs' damage in the sum of $500,000", for which sum judgment was prayed.
Marché defaulted, and after a brief hearing on the issue of damages on January 5, 1983, at which Marché was not represented, plaintiffs were awarded damages of $500,000. No part of this judgment has been paid. On the premise that defendant's policy covered their claim against Marché, plaintiffs demanded, on or about February 3, 1983, that defendant pay them the policy limits of $100,000. Again denying coverage, defendant refused to comply with plaintiffs' demand. This suit followed, on March 25, 1983.
By their amended complaint, plaintiffs seek a judgment that under the terms of the policy issued to Marché defendant is liable to plaintiffs for the payment of the policy limit of $100,000, and that by reason of defendant's refusal to defend Marché against plaintiffs' claim in the state court suit, defendant is also liable to plaintiffs for the entire amount of their $500,000 default judgment. A declaration was sought to the effect that all damages sustained by plaintiffs due to the failure of the roof are within the scope of the coverage of the policy and that judgment be entered against defendant for $500,000 with interest thereon from the date coverage was denied.
Admittedly, the policy in question obligates defendant to pay on behalf of Marché all sums to which it became legally obligated to pay as damages because of injury to property, subject, however, to the exclusions from such liability set forth in the policy. The controverted issue is whether any of the exclusions on the basis of which coverage was denied apply to the judgment obtained by plaintiffs. The pertinent exclusions relied on by defendant are (f) and (g) of the Completed Operations Liability Insurance coverage and the identical exclusions (n) and (o) of the Manufacturers' and Contractors' Liability Insurance.[3]
These exclusions provide:
"This insurance does not apply
(f) to property damage to the named insured's products arising out of such products or any part of such products;
(g) to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." Clearly, these provisions exclude liability for damage to the insured's work product, the roofing system installed by Marché.
*1432 In Biebel Bros. Inc. v. United States Fidelity and Guaranty Co., 522 F.2d 1207 (8 Cir.1975), construing exclusions identical to those here involved, the Court held that the cost of removing and replacing the defective material could not be recovered by the insured roofing contractor, for the reasons that the exclusion "clearly provides that the insurance does not apply to property damage to work performed by or on behalf of (the insured) arising out of either the work or any portion thereof, or out of the material, parts or equipment furnished in connection therewith."
Plaintiffs do not question the holding of Biebel and other similar cases, but contend that they are distinguishable on their facts from those in the instant case. Their theory is that inasmuch as the damage occurred after the defective product had been "integrated" into the building (that is, after the work of installing the roof had been completed) the damage was to the building and not to the insured's product. Clearly, this is an afterthought which first surfaced when this suit was filed and after the rights of the parties had become fixed.
It is, of course, true that the defective roof product involved in Biebel (consisting of Biebel's work and material) was being installed in a building under construction (by others than Biebel) and that the defect was discovered before the work had been completed. Plaintiffs stress the work-in-progress aspect of Biebel, contending that once the work was completed and the roof applied by Marché "became integrated into the structure", the policy exclusion ceased to apply. Biebel does not so limit the scope of the exclusion, and any such limitation would render meaningless the exclusions in the "Completed Operations Liability Insurance."
That Biebel did not intend to limit the exclusion to work-in-progress is made clear by the Court's discussion of the various cases on which the District Court had relied. Thus, in Home Indemnity Co. v. Miller, 399 F.2d 78 (8 Cir.1968) the insured's work product was the entire building which he had constructed, the possession of which he had transferred to the purchaser after completion. Later, defects became apparent. In that situation, the exclusion was held to apply to the entire building. Comparably, in the instant case, the entire roof constituted Marché's work product, and it did not cease to be such for purposes of the exclusion simply because it was applied on plaintiffs' building.
So, too, in Pittsburgh Bridge & Iron Works v. Liberty Mutual Insurance Co., 444 F.2d 1286 (3 Cir.1971) applying Pennsylvania law, the insured had furnished a defective part which caused physical damage to the balance of a tramway system erected under a different subcontract. The Court held that the exclusion operated to exclude coverage as to the defective part not as to the damage to the rest of the tramway system into which the part had been integrated.
The holdings in other cases, including the unpublished case of Carboline Co. v. Home Indemnity Co., 517 F.2d 1407 (8 Cir.1975), upon which plaintiffs rely in spite of the 8th Circuit's admonition, are similar. That is, the exclusion is applicable insofar as the damage sustained is to the work product of the insured, but not as to damage to another's building, for the obvious reason that "the damaged structure could not be deemed to be the work product of the insured." Where, as in Biebel, the building did not sustain damage, and the only damage was to the insured's own work product (the roof), the exclusion is properly invoked. That is the precise factual situation here involved.
Unquestionably, plaintiffs' building could have been damaged by the roof failure, and if so, such damage would not be excluded from coverage. The fact is, however, that neither in their letters nor in their state court petition did plaintiffs make any claim for damages other than for the roof, which required its removal and replacement. All that was necessary to make plaintiffs whole was to remove and replace the defective roofing system, or otherwise redo it, similarly to Biebel in which the Court noted that "It is clear there was no adverse effect on the building after the error had been corrected." We add that not only was *1433 there no evidence even at the trial hereof of any damage except to the roof, but that defendant's pretrial discovery efforts to ascertain the particulars of the damage claimed by plaintiffs were repulsed on the assertion that the parties could not go beyond the allegations of the state court petition.
It must be borne in mind that defendant's initial decision of noncoverage was based on the two letters sent to Marché by plaintiffs. As appears supra, the first letter (from plaintiff's counsel) adverted only to the defective roofing material and insisted only that Marché make "repair and replacement where necessary of all defective material and workmanship." The second letter (which submitted plaintiffs' proposed agreement) related only to "handling" the problem of the roof failure by repairing the then existing and probable leaks as well as repairing future leaks. Nowhere in either letter did plaintiffs make a claim that their building had been damaged. Understandably, therefore, defendant informed Marché that plaintiffs' claim "as presently presented" (that is, for repair and replacement of the roof), was not covered by its policy.
The claim alleged in the state court suit against Marché is consistent with the position plaintiffs had taken in their letters. What they there alleged was that the roofing system by Marché (the performance of which had been guaranteed for 5 years) was cracking, developing splits and leaking, and that as a direct result thereof "Plaintiffs will be required to engage roofing contractors to redo and repair the roof", all to plaintiffs' damage in the sum of $500,000. Defendant's final decision of non coverage was made on the basis of the allegations in the state court suit.
It is apparent that the only damage sustained by plaintiffs was the contemplated cost of redoing and repairing the defective roof. No physical damage to any other part of plaintiffs' building was alleged or proven.[4] And as we have noted supra, all attempts by defendant to ascertain whether any portion of the $500,000 awarded to plaintiffs were for damages to the building other than the cost of replacing the roof were met with the objection of irrelevance. In our judgment, the Missouri courts would hold under the facts here involved that defendant's policy would cover only damages to the building other than to the roof. Absent, as here, allegations of such additional damage and the amount thereof, the exclusion applies.
We have not overlooked plaintiffs' contention, citing Lane v. Hartford Fire Ins. Co., 343 F.Supp. 79 (D.C.Mo.1972) that defendant is collaterally estopped from relitigating the essential facts alleged therein. That is true only as to the fact of the defective roof and the cost of redoing and repairing it. However, as Lane holds, 343 F.Supp. at 86, the prior judgment does not preclude defendant from litigating the question of coverage in this proceeding.
Plaintiffs assert that having alleged in the suit against Marché that the defective roof "threatened the stability" of their building, they sufficiently alleged that the building itself had been damaged. We do not so read the petition. All that is alleged is simply that the "threat" to the stability of the building necessitates redoing and repairing the roof. Once that is done, the "threat" vanishes.
We repeat, there is no allegation in the state court suit of any physical damage to the building other than to the roof, and the damage to the roof was excluded from coverage. It follows that judgment should be entered in favor of defendant adjudging and declaring that the policy did not afford coverage to Marché with respect to the defective roof and that the damages recovered by plaintiffs by reason of the roof failure are not within the scope of the policy coverage.
Although we believe the claim is without merit, the foregoing ruling renders it unnecessary to definitively decide plaintiffs' further claim that by reason of defendant's refusal to defend the state court suit against Marché, it would be liable to plaintiffs not only for the $100,000 policy limit *1434 (assuming coverage) but also for the excess of their judgment over the policy limit.

JUDGMENT
The Court having this day entered its MEMORANDUM AND ORDER herein,
NOW THEREFORE, in accordance therewith and for the reasons therein stated,
IT IS HEREBY ORDERED, ADJUDGED and DECLARED that the policy of liability insurance issued by defendant to Building Restoration of St. Louis, Division of Marché, Inc. excludes from coverage and does not apply to the failure of the roof installed by Marché, Inc. on plaintiffs' building at 8500 Valcour in the County of St. Louis, Missouri, and that the damages to Marché's said work product arising out of said work and materials are not within the scope of said policy coverage.
IT IS FURTHER ORDERED, ADJUDGED and DECLARED that defendant is not liable to plaintiffs for the damages sustained by them by reason of said failure of the roof installed by Marché, and that plaintiffs recover nothing, and that plaintiffs' claim for the insurance money be dismissed with prejudice at plaintiffs' costs.
NOTES
[1] The trial evidence was of a very skeletal nature, inasmuch as both parties insisted that the barebones evidence submitted on their respective motions for summary judgment should suffice for our purposes.
[2] The other two defendants in that suit are the manufacturers and suppliers (and guarantors) of the roofing system installed by Marché. What disposition, if any, was made of the claim against them does not appear of record.
[3] We do not believe the exclusion (e) of the Completed Operations Liability Insurance and identical exclusion (m) of the Manufacturers' and Contractors Liability Insurance could have any application whatever to the instant facts.
[4] The transcript of the default hearing was submitted on the motion for summary judgment.