**MISSOURI TERRAZZO COMPANY,**
Appellee,

v.

**IOWA NATIONAL MUTUAL INSURANCE COMPANY, Appellant.**

No. 83–1889–EM.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1984.

Decided Aug. 8, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 28, 1984.

by fraud" if its value exceeds $5,000. The indictment clearly charged Skinner with a violation of paragraph three, however.

Evans & Dixon, Gerre S. Langton, Jeffry S. Thomsen, St. Louis, Mo., for appellant Iowa Nat. Mut. Ins. Co.

Kortenhof & Ely, Ben Ely, Jr., Victoria S. Sheehan, St. Louis, Mo., for appellee Missouri Terrazzo Co., Inc.

Before ROSS, BENNETT,* and McMIL-LIAN, Circuit Judges.

* The Hon. Marion T. Bennett, United States Circuit Judge for the Federal Circuit, sitting by designation.

BENNETT, Circuit Judge.

Iowa National Mutual Insurance Company appeals from a judgment of the district court,[1] 566 F.Supp. 546 (E.D.Mo.1983), holding it liable under a general liability insurance policy issued to Missouri Terrazzo Company. The district court held that the policy covered the cost of a settlement between Missouri Terrazzo and National Supermarket, and that Iowa National was liable for attorney fees and costs by reason of its duty to defend Missouri Terrazzo in a lawsuit stemming from damage to a floor installed by Missouri Terrazzo. We affirm.

*Background*

Missouri Terrazzo, plaintiff in the court below, is a Missouri corporation engaged in the business of installing terrazzo floors, and defendant is an Iowa insurance company.[2] Iowa National issued a policy of general liability insurance to Missouri Terrazzo for the period of December 31, 1975, to December 31, 1976. In November 1976 cracking and discoloration of the floor installed by Missouri Terrazzo became apparent. In October 1979, National Supermarket commenced suit against Missouri Terrazzo, among others, alleging improper construction of a terrazzo floor and connecting structures in one of its supermarkets. Various cross-claims were filed against Missouri Terrazzo by the other defendants in the National Supermarket suit.

Missouri Terrazzo apprised the insurance company of the lawsuit, but Iowa National denied liability on the basis of certain exclusions in the policy. Iowa National also denied any duty to defend Missouri Terrazzo in the National Supermarket suit. On December 28, 1981, National Supermarket dismissed its suit against Missouri Terrazzo, without prejudice, because no contract existed between the parties, but Missouri Terrazzo, a subcontractor, remained in the suit as a third-party defendant by virtue of the cross-claims against it. The suit was settled in April 1982, before trial, for $268,000, of which Missouri Terrazzo's share was $30,000.

Missouri Terrazzo filed suit in the district court against Iowa National, based upon diversity of citizenship, 28 U.S.C. § 1332, seeking reimbursement for its share of the settlement, attorney fees, and costs incurred in the National Supermarket suit.

The district court applied Missouri law, and held as follows:[3] (1) the damage to National Supermarket's floor meets the insurance policy's definition of "property damage"; (2) exclusion (m), relating to the loss of use of tangible property, is inapplicable, as the damages sought by National Supermarket represented a diminution in the value of the building not excluded by the policy; (3) exclusions (n) and (o), relating to property damage to the insured's products or work arising out of such products or work, are inapplicable, as these exclusions do not bar coverage for damages to property other than that of the insured; (4) exclusion (p), relating to damages for the withdrawal from use of the insured's products or work, is inapplicable, as Missouri Terrazzo has not withdrawn its product for defects and this exclusion does not bar coverage for claims of diminution in value; and (5) because the loss suffered by National Supermarket was covered by the insurance policy, Iowa National had a duty to defend Missouri Terrazzo, and is therefore liable to it for attorney fees, expenses, and other damages arising out of the National Supermarket suit. Based on its holdings that the insurance policy covered Missouri Terrazzo's cost of the settlement of the National Supermarket suit and that Iowa National had a duty to defend Missouri Terrazzo in this suit, the district court entered judgment for Missouri Terrazzo in the amount of $69,946.28.

---

1. The Hon. Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

2. A more detailed statement of facts may be found in the district court's opinion, 566 F.Supp. at 548–52.

3. Only those portions of the district court's holdings that are challenged on appeal will be discussed.

*Discussion.*

Iowa National contends that the district court erred in its holding that National Supermarket's claim for diminution in value constitutes "property damage," as that term is defined in the policy. The policy provides that Iowa National will pay "all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence."

"Property damage" is defined as "physical damage to or destruction of tangible property which occurs during the policy period." The parties do not disagree that National Supermarket's claim for diminution in value represents the difference between the value of the building before the injury and after the injury. *See* 566 F.Supp. at 553. Iowa National contends that the claim for diminution in value, since it did not include the cost of repair or replacement of the defective floor, is for nonphysical damage, and is therefore not covered by the policy. We cannot agree.

■ The district court held that the damage suffered by National Supermarket met the policy's definition of "property damage" because "[t]he floor, which is tangible property, physically deteriorated by cracking, settling, and flaking during the policy period." 566 F.Supp. at 552. The cases Iowa National relies upon for its proposition that diminution in value cannot constitute "property damage," *St. Paul Fire and Marine Insurance Co. v. Northern Grain Co.*, 365 F.2d 361, 366 (8th Cir.1966) (diminution in value of wheat crop caused by sale of wrong type of seed),[4] and *American Motorists Insurance Co. v. Trane Co.*, 544 F.Supp. 669, 687 (W.D.Wis.1982) (diminished value of liquid natural gas plants, in the form of production shortfalls, caused by faulty heat exchangers), are inapposite. Here, the physical damage to tangible property, i.e., the physical deterioration of the floor, is manifest. We agree with Missouri Terrazzo that the diminution in value in this case is "merely a means of measuring the damage sustained as a result of the property damage." We therefore hold that the district court did not err in its conclusion that Missouri Terrazzo's liability to National Supermarket was based on "property damage," as that term is defined in the policy. Thus, it is clear that the policy covered National Supermarket's claim for damages unless an exclusionary clause is applicable.

Iowa National principally relies upon the following exclusions to support its contention that Missouri Terrazzo's liability in the National Supermarket suit was not covered under the policy:

This insurance does not apply:

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

The district court held that exclusions (n) and (o) are inapplicable, and, therefore, do not bar coverage:

These exclusions [ (n) and (o) ] bar coverage for property damage to the named insured's products or work arising out of such products or work. These exclusions make no reference to damage to property other than the insured's goods or other accidental loss resulting from the defective condition of the insured's work product. Therefore, these exclusions do not bar coverage for damages to property other than that of the insured. *St. Paul Fire and Marine Insurance Company*

---

**4.** In *Northern Grain,* the court held that the diminution in the yield of the wheat crop constituted "damages because of injury to or destruction of property ...." *See* 365 F.2d at 365. Iowa National, however, argues that a different result is warranted here because the policy defines "property damage" as "physical damage ... to tangible property," and would thus bar "consequential or intangible damages, in addition to direct physical damage to other property" permitted under the policy in effect in *Northern Grain. Id.* at 366.

v. *Northern Grain Company*, 365 F.2d 361, 368 (8th Cir.1966).

566 F.Supp. at 553.

As Iowa National points out, if Missouri Terrazzo's liability in the National Supermarket suit was based upon the cost of repair or replacement of the defective floor, then exclusions (n) and (o) would bar coverage. *See, e.g., Biebel Brothers, Inc. v. United States Fidelity and Guaranty Co.*, 522 F.2d 1207, 1211 (8th Cir.1975) (coverage barred for cost of contractor's removal and replacement of a defective roof installed by the insured); *Simons v. Great Southwest Fire Insurance Co.*, 569 F.Supp. 1429 (E.D.Mo.1983), *aff'd*, 734 F.2d 1318 (8th Cir.1984) (coverage barred for cost of repairs to a roof installed by the insured). In the instant case, however, the district court held that Missouri Terrazzo's liability was premised upon the diminution in value of the building as a whole, and that these exclusions did not bar coverage for injury to property other than that of the insured.

Iowa National argues that the only damage to the building was the defective floor installed by Missouri Terrazzo, and therefore exclusions (n) and (o) bar coverage. Based upon the decision of this court in *Western Casualty and Surety Co. v. Polar Panel Co.*, 457 F.2d 957 (8th Cir.1972), we disagree.

In *Polar Panel*, a contractor (the insured) sued an insurance company for its cost of settlement and attorney fees incurred in a lawsuit brought against it by Kohl Corporation. The insured had installed insulating panels for Kohl in a building which, during the term of the policy, developed blisters that created an unsightly appearance. The court found that "the panels were defective for the purpose intended and caused a diminution in the value of the completed building." 457 F.2d at 959. The settlement with Kohl was based on a figure representing the cost of masking the panels with an appropriate coating, as the cost of replacement would have greatly exceeded this amount.

The insurance company denied coverage on the basis of two exclusions identically worded to exclusions (n) and (o) in the present case, *see* 457 F.2d at 960, because the only damage to the building was to the panels installed by the insured. Nevertheless, the court held that coverage was not barred by these exclusions:

under Minnesota law where the defective product has been incorporated into a building and caused a diminution in the value of the building the occurrence constitutes property damage to the entire building and is covered by a policy of this type.

The exclusionary clause reaches and carves out of the policy the damage to the particular product but not the overall damage that the incorporation of the defective structure causes to the entire structure.

*Id.* (footnote omitted).

■■■ In this case, it is undisputed that Missouri law is to be applied, but there is no indication that a different result is warranted. As stated by the district court:

Under Missouri law provisions designed to restrict coverage are to be construed most strongly against the insurer and to the favor of the insured; the insurer bears the burden of expressing its intention within such clauses by clear and unambiguous terms. *Citizens Insurance Company v. Kansas City Commercial Cartage, Inc.*, 611 S.W.2d 302, 307 (Mo.App.1980).

566 F.Supp. at 553. *See also Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8th Cir.1981). Certainly Iowa National could have clearly barred coverage for diminution in value for situations as here exist where the incorporation of a defective product causes damage to the entire structure. *See Northern Grain*, 365 F.2d at 367. Having failed to do so, we hold that the district court did not err in its conclusion that exclusions (n) and (o) do not bar coverage.

Since we hold that Iowa National was liable to Missouri Terrazzo on the basis of physical injury to tangible property, we

need not address Iowa National's contention that exclusion (m), relating to loss of use of tangible property which has not been physically injured, and exclusion (p), relating to withdrawal from use of the insured's product or work, bar coverage. We therefore affirm the district court's holding that Iowa National is liable to Missouri Terrazzo for the latter's share of the settlement with National Supermarket, consisting of $30,000.

■ We also affirm the district court's holding that Iowa National is liable for the attorney fees and costs incurred by Missouri Terrazzo in the National Supermarket suit.[5] As stated in *Landie v. Century Indemnity Co.*, 390 S.W.2d 558, 562 (Mo. App.1965):

> Thus the universal rule which Missouri follows is that an insurance company is liable to the limits of its policy plus attorney fees, expenses and other damages where it refuses to defend and insured who is in fact covered. This is true even though the company acts in good faith and has reasonable ground to believe there is no coverage under the policy.

The general liability portion of the policy provides, in relevant part, that Iowa National

> shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent ....

By its refusal to defend Missouri Terrazzo in the National Supermarket suit on the basis that coverage was excluded under the

policy, Iowa National breached its contract with Missouri Terrazzo, and is therefore liable for damages resulting from that breach.

■ Under Missouri law, an insurer's duty to defend is broader than the duty to indemnify. *Russell Stover Candies,* 649 F.2d at 625. The standard for determining whether an insurer owes a duty to defend is based on a comparison of the language of the policy with the allegations of the plaintiff's complaint, and where those allegations state a claim which is *potentially* or *arguably* within the policy's coverage, then the insurer must defend the suit. *Russell Stover Candies, id.* at 624; *Hartford Accident and Indemnity v. Krekeler,* 491 F.2d 884, 886–87 (8th Cir.1974). In view of our holding that Missouri Terrazzo's liability in the National Supermarket suit was indeed covered under the policy, we have little difficulty in concluding that the district court was correct in holding that Iowa National breached its duty to defend Missouri Terrazzo in that suit. We agree with the district court that Iowa National refused to defend at its peril, and must therefore bear the cost of Missouri Terrazzo's defense in the National Supermarket suit. Altogether, Missouri Terrazzo expended $28,110.50 in attorney fees and $11,835.78 in costs in its defense of the National Supermarket suit. The district court found that these amounts were reasonable.[6]

Finally, Iowa National asserts that there was insufficient evidence for the district court to find that the amount paid by Missouri Terrazzo in settlement of National

---

5. Missouri Terrazzo does not challenge the district court's holding that it is not entitled to attorney fees for its declaratory judgment action against Iowa National, as the court found that Iowa National's refusal to defend Missouri Terrazzo in the National Supermarket suit was not "vexatious." *See* MO.ANN.STAT. § 375.420.

6. Alternatively, Iowa National asserts that even if we find that it had a duty to defend, that duty ceased as of March 23, 1982, when Missouri Terrazzo's attorney sent a letter to Iowa National indicating that they intended to settle the lawsuit with National Supermarket. Iowa Na-

tional's assertion is based on the premise that "[a]t this point no element of National's damage claims were covered by the policy and Iowa National had no duty to defend," because it was then apparent that the damage claim did not include loss of use of the building or damage to electrical conduits in the floor. Our holding in this case, however, is based on the conclusion that the diminution in value of the building constituted "property damage," not excluded from coverage, and, thus, Iowa National's duty to defend continued until the time of final settlement.

Supermarket's damage claim was for property damage covered by the policy. This assertion is without merit, as it is clear that there is ample evidence supporting the court's finding that the amount paid for the settlement represented the diminution in value of the building. *See* Finding of Fact No. 17, 566 F.Supp. at 551.

*Conclusion.*

We conclude that the district court was correct in holding that Iowa National must indemnify Missouri Terrazzo for its cost of the settlement, attorney fees, and costs in the National Supermarket suit. The judgment of the district court, awarding Missouri Terrazzo Company $69,946.28, is affirmed.

Affirmed.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I believe the majority opinion has mischaracterized the basis of Missouri Terrazzo's liability to National Supermarkets and that, based on this mischaracterization, has reached the wrong result in this case.

I believe that a flaw in the analysis of this case by the district court and the majority opinion is labeling the damages claimed by National Supermarkets as diminution in value of the building (566 F.Supp. at 553; *supra* at 650), without considering the component parts of this claim, *i.e.*, the damage to the floor and the reduced market value of the building. Missouri Terrazzo's liability was premised, at least in part, upon the physical damage to the floor; however, as the majority opinion recognizes, *supra* at 650, coverage for such liability is excluded by exclusions (n) and (o) of the policy.

In my opinion the balance of National Supermarket's claim, *i.e.*, either the decrease in the value of the building due to a buyer's loss of confidence in the building's quality even after a new defect-free terrazzo floor is installed or the decrease in the value of the building because of a less desirable tile floor, is not for "physical damage to tangible property" and is therefore not covered by the policy. The majority opinion's reliance on *Western Casualty & Surety Co. v. Polar Panel Co.*, 457 F.2d 957 (8th Cir.1972), is misplaced. The liability insurance policy in *Polar Panel*, as in the present case, covered sums which the insured was legally obligated to pay because of "property damage." The policy in *Polar Panel*, however, did *not* define property damage as "physical damage to tangible property" as does the policy in the present case. I believe that, by so defining property damage, Iowa National intended to limit its coverage to liability for physical damage as opposed to injury to market value and that Iowa National expressed this intention in clear and unambiguous terms.

As the majority opinion notes, *supra* at 651, under Missouri law the language of an ambiguous insurance policy is to be construed in favor of the insured. This principle, however, does not authorize courts to rewrite insurance contracts to provide coverage for which the parties did not contract. Where there is no ambiguity and the policy provision is a valid one, the language of the policy must be enforced in accordance with its plain meaning. *E.g.*, *M.F.A. Mutual Insurance Co. v. American Family Mutual Insurance Co.*, 654 S.W.2d 230, 232 (Mo.Ct.App.1983). I do not think the majority opinion does this.

Although the facts of *American Motorists Insurance Co. v. Trane Co.*, 544 F.Supp. 669 (W.D.Wis.1982), cited by the majority at 650, are distinguishable, its discussion of the distinction between injury to property as opposed to physical damage to property, a distinction which I believe is critical to this case, is instructive. The court there held that a plant which experienced a shortfall in production because of the failure of a component part was diminished in value and that such diminution in value constituted property damage under a liability insurance policy which defined property damage as "injury to tangible property." *Id.* at 681–82. The court specifically noted that had a post-1973 policy, which defined property damage as "physical damage to tangible property," been in

effect, the manufacturer of the defective component part would *not* have been covered for its liability for diminution in the value of the plant.

Accordingly, I would reverse the judgment of the district court.